## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JUDY SPECTOR,                              )
on Behalf of Herself and All Others        )
Similarly Situated,                        )
                                           )
        Plaintiff,                  )
                                           )   No. 15 C 4298
     vs.                             )
                                           )
MONDELĒZ INTERNATIONAL, INC.,              )   Judge Thomas M. Durkin
                                           )
     Defendant.                      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Judy Spector brings this false advertising lawsuit alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (Count I), breach of express warranty (Count II) and unjust enrichment (Count III). Plaintiff asserts these claims on behalf of herself and a class of nationwide or Illinois consumers. Jurisdiction is predicated on the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Defendant seeks dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Court grants Defendant's motion.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to

provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## BACKGROUND

For purposes of this motion, the Court presumes that the factual allegations in the complaint are true and draws all reasonable inferences in favor of Plaintiff. *Mann*, 707 F.3d at 877. Defendant Mondelēz International, Inc. is the manufacturer of a product called belVita Breakfast Biscuits ("Breakfast Biscuits") and a substantially similar product called belVita Breakfast Bites ("Breakfast Bites") (collectively "the Products"). Plaintiff alleges that she purchased a package of Breakfast Biscuits on two occasions, and that in making those purchases she relied on the representations made by Defendant on the package label. R. 1 at 4-5 (¶ 12). Plaintiff reproduces in her complaint (and the Court will reproduce here) those parts of the packaging on which Plaintiff allegedly relied. First, Plaintiff points out

that on the front of the Breakfast Biscuits box the word "Breakfast" appears immediately above the product name "belVita," and below the product name is a picture of four biscuits. *Id.* at 6-7 (¶¶ 18-19). To the left of the picture is the phrase "NUTRITIOUS STEADY ENERGY ALL MORNING":



*Id.* (¶ 18). Plaintiff notes that the phrase "Nutritious Steady Energy All Morning" is included as part of a clock graphic with the hands of the clock pointing at both eight o'clock and twelve o'clock, and a swooping clockwise arrow representing the duration of a four-hour period of time between 8 a.m. and noon:



R. 1 at 7 (¶ 20). Plaintiff alleges that the Breakfast Bites box utilizes similar graphics and makes similar claims. Thus, on the front of the Breakfast Bites package is a clock icon like the one on the Breakfast Biscuits box except that instead of the clock hands, the Breakfast Bites box contains the phrase "4 hours":



*Id.* at 9 (¶ 24). The back of the Breakfast Bites box states that a single serving is "[a] nutritious start to a busy morning," which is "a nutritious, convenient, on the go breakfast choice that contains slow-release carbs from wholesome grains to help fuel your body for 4 hours":



*Id.* at 10-11 (¶ 26).

Plaintiff alleges that the Products' packaging as set forth above is false and misleading in that it portrays the Products "as offering an entire wholesome breakfast providing at least four hours all morning of 'nutritious steady energy' in a single package of four Breakfast Biscuits or Bites, making them perfect for an 'on-the-go' lifestyle due to their being 'portable.'" R. 1 at 2 (¶ 4). This portrayal of the Products, Plaintiff alleges, is misleading because the Products actually provide four hours of nutritious steady energy *only* if they are combined with a serving of low-fat milk. *Id.*; *see also id.* at 2-3, 11 (¶¶ 3, 4, 7, 8, 30). Plaintiff does not allege that the Breakfast Biscuits she consumed—presumably alone (that is, without milk)—failed

to meet her expectations regarding the promised four hours of nutritious steady energy. Instead, the sole basis for her allegation regarding the need for a simultaneous serving of low-fat milk is Defendant's supposed disclosure to consumers in other countries that a serving of milk is required. *Id.* at 12 (¶ 31). The only specific disclosures to which Plaintiff cites are made on Defendant's website in Australia. *Id.* at 12-14 (¶¶ 31-34). According to Plaintiff, the representations on the Australian website show that "Defendant fails to state in its United States advertising that the purported studies on which Defendant claims to rely require that the Products be consumed with at least a serving of low-fat milk in order to obtain the benefits Defendant touts." *Id.* at 12 (¶ 31).

In further support of the allegation that Defendant misleads consumers in the United States, Plaintiff cites to the back of the Breakfast Biscuits box, which repeats the claim of four hours of "nutritious steady energy all morning" while suggesting that Breakfast Biscuits be "enjoy[ed] . . . as part of a balanced breakfast with a serving of low-fat dairy and fruit":

> We all need energy to start the morning. But we also need energy that lasts. We worked closely with nutritionists to design belVita, which are specially baked to release energy regularly and continuously to fuel your body throughout the morning.
>
> Enjoy belVita Breakfast Biscuits as a part of a balanced breakfast with a serving of low-fat dairy and fruit.

*Id.* (¶ 21); *see also id.* at 8 n. 5 (quoting the side of the Breakfast Biscuits packaging, which states that "[n]utrition experts recommend eating a balanced breakfast to start the day off right. Eating foods rich in whole grains along with a piece of fruit

and a serving of fat-free or low fat dairy provide you with a delicious and nutritious breakfast"). Plaintiff alleges that because these statements are phrased as though consuming low-fat milk with the Products is optional rather than mandatory, they are misleading to the American consumer. Plaintiff also points to the omission of this information on Defendant's domestic website, which according to Plaintiff contains information generally about the need for a balanced breakfast including low-fat milk, but does not specifically state that a serving of low-fat milk is required to obtain the Products' benefits. *See* R. 1 at 6, 8, 10-11 (¶¶ 16, 23, 28-30). Plaintiff does not allege that she ever saw or relied upon the statements to which she cites from Defendant's domestic website, and instead bases her claim solely on the representations appearing on the Products' packaging.

## DISCUSSION

### I.    ICFA

Plaintiff alleges that Defendant violated the ICFA because the representations it makes on the Products' packaging—(1) "nutritious steady energy all morning" for Breakfast Biscuits, and (2) "4 hours of nutritious steady energy" for Breakfast Bites—are literally false. The Court will refer to both representations as the "nutritious steady energy" representation. "To succeed in a private cause of action under Consumer Fraud Act, a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by

the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005) (internal quotation marks and citation omitted). "[A] complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (ICFA claim sounds in fraud and therefore is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011) (same). "The Consumer Fraud Act defines deceptive acts or practices as: 'including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce.'" *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1028 (Ill. App. 2014) (quoting 815 ILCS 505/2 (West 2012)).

## A. PLAINTIFF'S FAILURE TO ALLEGE FACTS SUPPORTING CLAIM OF ACTUAL FALSITY.

Plaintiff alleges that the deceptive act or practice committed by Defendant is the "nutritious steady energy" representation on the Products' packaging. But Plaintiff has pleaded *no* facts, such as personal experience or third-party studies, showing that the Products do *not* provide "nutritious steady energy" as promised. Thus, this case is similar to *Phillips*, where the Illinois Appellate Court held that the plaintiffs had failed to allege a legally sufficient deceptive act or practice under

the ICFA, requiring dismissal of their complaint. The plaintiffs in *Phillips* were law school attendees who brought a class action against DePaul University College of Law alleging a violation of the ICFA based on the school's representation of its graduate employment outcomes. Specifically, the plaintiffs alleged that the employment information for 2005, 2007, and 2009 classes published by DePaul and listing the percentages of graduates employed in the various employment categories, and their average salaries, constituted the deceptive act or practice. *Phillips*, 19 N.E.3d at 1028. The court stated, however, that the plaintiffs had "pleaded no facts showing that the statistics . . . were untrue," and that their "unsupported, conclusory allegations regarding the falsity of employment information were insufficient to assert any deceptive act or practice committed by DePaul." *Id.* (*citing Floyd v. Rockford Park Distr.*, 823 N.E.2d 1004 (2005) (conclusory statements of fact do not suffice to state a cause of action)).

Similarly, Plaintiff's unsupported, conclusory allegation here regarding the falsity of the "nutritious steady energy" representation does not suffice to state a cause of action under the ICFA. *See, e.g., Par Sterile Prods., LLC v. Fresenius Kabi USA LLC*, 2015 WL 1263041, at *7 (N.D. Ill. Mar. 17, 2015) ("Par's complaint does not contain sufficient factual matter for the court to reasonably infer that Fresenius's Vasopressin Injection is not safe or effective. Any claims based on the allegations that Fresenius represents that its product is safe and effective . . . must be dismissed as conclusory . . . ."). Plaintiff repeatedly states that she does not know whether the Product provides four hours of nutritious steady energy, with or

without milk. *See, e.g,* R. 29 at 3 n. 2. But if Plaintiff does not have any idea whether the Products provided her with four hours of nutritious steady energy, then the Court does not see how she can have a good faith basis for alleging that the "nutritious steady energy" representation is false.

## B. PLAINTIFF'S ALLEGATIONS RAISING LACK OF SUBSTANTIATION ISSUE

Plaintiff seeks to avoid the obvious absence of any specific facts that would support the conclusory allegation that the "nutritious steady energy" claim is actually false in a somewhat unusual way. Plaintiff says that the studies cited by Defendant on its Australian website are sufficient to form the basis of a plausible claim that the "nutritious steady energy" claim is actually false because Defendant supposedly states on the Australian website that those studies require that a glass of milk be consumed with the Products. To understand why this allegation presents a unique way of pleading Plaintiff's actual falsity claim, it is helpful to step back and consider the two ways in which a claim of deceptive advertising can be shown. A plaintiff can "show that an advertisement is deceptive either by proving its falsity or by showing that its proponent lacked a reasonable basis for asserting its truth." *F.T.C. v. Sabal*, 32 F. Supp. 2d 1004, 1007 (N.D. Ill. 1998) (discussing false advertising claim brought by the FTC pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a));[1] *see also BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994) (Lanham Act) (plaintiff must "offer affirmative proof

---

[1] *See Wendorf v. Landers*, 755 F. Supp. 2d 972, 979 (N.D. Ill. 2010) ("Section 2 of the [ICFA] directs that in determining whether conduct is unfair under the ICFA, interpretations of 'unfair or deceptive practices' under section 5(a) of the [FTCA] shall be considered.") (citations omitted).

that the advertisement is false," or, "[i]f the challenged advertisement makes implicit or explicit references to tests, the plaintiff may satisfy its burden by showing that those tests do not prove the proposition"). The second method is known as an establishment claim, *see BASF Corp.,* 41 F.3d at 1090, or, more commonly, a lack of substantiation claim, *see Greifenstein v. Estee Lauder Corp.,* 2013 WL 3874073, at *4 (N.D. Ill. July 26, 2013).

Under Illinois law, "[l]ack of substantiation is deceptive only when the claim at issue implies there is substantiation for that claim, *i.e.,* if defendants had claimed something along the lines of 'tests show that [the product in question] is [ ] effective . . . ." *Gredell v. Wyethe Laboratories, Inc.,* 854 N.E.2d 752, 756 (Ill. App. 2006) (citing *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 939 n. 2 (7th Cir. 2001) ("lack of substantiation is deceptive only when the comparative claim at issue implies that there is substantiation for the claim made")). Here, the Products' packaging does not imply there is substantiation for the "nutritious steady energy" claim. As a result, Plaintiff cannot bring a lack of substantiation claim against Defendant based on that packaging. Moreover, while Defendant's Australian website *does* imply there is substantiation for the "nutritious steady energy" claim, Plaintiff cannot bring a lack of substantiation claim against Defendant based on that website because she does not allege she ever saw the substantiation claim on that website. *See Gredell,* 854 N.E.2d at 757 (although reliance is not an element of statutory consumer fraud, plaintiff must show proximate causation, which he cannot do because he was not aware of the alleged misrepresentations and/or omissions); *Muir*

*v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 991 (N.D. Ill. 2013) ("Under the ICFA, deceptive advertising cannot be the proximate cause of damages . . . unless it actually deceives the plaintiff.") (internal quotation marks and citation omitted). In other words, if Plaintiff is unable to allege actual falsity and instead must rely on an establishment or lack of substantiation claim, then she is out of court.

Plaintiff avoids the problem of not being able to plead a lack of substantiation theory by seeking to bootstrap a lack of substantiation claim into an actual falsity claim. That is, Plaintiff uses Defendant's testing data discussed on its Australian website (which she never saw) as the sole basis for alleging that Defendant's representation of "nutritious steady energy" on the Products' packaging (which does not make a substantiation claim) is actually false. While the Court is tempted simply to treat Plaintiff's complaint as alleging a lack of substantiation claim and dismiss it based on *Gredell*, the Court will instead overlook Plaintiff's bootstrap approach and address her allegations as she characterizes them, which is to say, as allegations of actual falsity as opposed to lack of substantiation.

### C. DEFENDANT'S RELIANCE ON TESTING DATA TO PROVE TRUTH OF THE REPRESENTATION

Before discussing Plaintiff's allegations of actual falsity based on the substantiation claim made by Defendant on its Australian website, the Court must address the preliminary question of whether Defendant may rely on documents outside the pleadings in arguing for dismissal of the complaint. Defendant attached the documents in question to its motion to dismiss. The documents are studies on which Defendant relies for its argument that the "nutritious steady energy" claim

on the Products' packaging is actually true *without* the need for a serving of low-fat milk.

On the one hand, Plaintiff takes the seemingly contradictory position that even though she relies on the testing data in alleging her actual falsity claim, the Court cannot consider that very same data in ruling on Defendant's motion to dismiss because the data is "outside the pleadings." *See* R. 29 at 9-10. It makes no sense to say that the Court can and must consider Defendant's representations about the testing data as a basis for Plaintiff's actual falsity claim, while at the same time arguing that the Court must ignore the actual testing data in evaluating the sufficiency of Plaintiff's allegations of falsity. The complaint expressly and repeatedly states that Plaintiff's ICFA claim is based on the results of "the purported studies on which Defendant claims to rely." R. 1 at 8 (¶ 22); *see also id.* at 10 (¶ 27); *id.* at 12 (¶ 31); *id.* at 14 (¶ 36); *id.* at 13 (¶ 34). Thus, notwithstanding Plaintiff's argument to the contrary, Plaintiff herself makes the studies "central to" her complaint. Under this view, Defendant is entitled to attach the data in question to its motion to dismiss in support of its argument that Plaintiff has misinterpreted Defendant's statements about that data found on Defendant's Australian website. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (calling plaintiff's argument that the district court erred in considering document attached to motion to dismiss "frivolous" where "plaintiffs themselves referred to the [document] in their complaint," citing *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("[D]ocuments attached to a motion to dismiss are

considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (internal quotation marks and citation omitted)); *see also Greifenstein*, 2013 WL 3874073, at * 4-6 (considering studies on which defendant relied to support wrinkle repair benefits of its product in ruling on motion to dismiss that plaintiff's lack of substantiation claim and actual falsity claim failed as a matter of law).

On the other hand, there is some merit to Plaintiff's contention that she should not have to take Defendant's word regarding which studies were relied upon in making the substantiation claim on the Australian website and that discovery would be appropriate on that issue. This is particularly true in light of the declaration of Defendant's counsel intended to lay the foundation for the documents submitted with Defendant's motion to dismiss. The declaration states that the attached three studies were relied upon by Defendant "for the 'steady energy' statement on its belVita breakfast products." R. 17-1 at 2 (¶ 2). The relevant issue is more specific than Defendant's counsel's statement, however. The question is not whether the attached studies are the ones on which Defendant generically relied in making the "'steady energy' statement on its belVita Products," but whether they are the same studies to which Defendant's Australian website refers (because those are the ones referred to in the complaint). Based on Defendant's counsel's declaration, the Court cannot say for certain whether they are.

The Court has two choices in these circumstances. It can either convert Defendant's motion to dismiss into a motion for summary judgment and continue

that motion to allow Plaintiff time to conduct discovery, or it can decline to consider the documents in question and proceed to handle Defendant's motion as a straightforward motion to dismiss. *See Levenstein v. Salafsky*, 164 F.3d 345, 347-48 (7th Cir. 1998). The Court has decided to proceed with Defendant's motion as a Rule 12(b)(6) motion to dismiss. Under Rule 12(b)(6), it is Plaintiff's burden to allege facts plausibly suggesting Defendant's advertising is false before the issue of whether Defendant can prove that its advertising is true need even be addressed. Therefore, the Court need not consider Plaintiff's argument that Defendant has failed to affirmatively show by its studies that the Product provides "nutritious steady energy" without the simultaneous consumption of a glass of low-fat milk. *See* R. 29 at 11-15. Instead, the Court will decide Defendant's motion based solely on the plausibility of Plaintiff's allegations.

### D. WHETHER PLAINTIFF'S ALLEGATION OF FALSITY BASED ON DEFENDANT'S SUBSTANTIATION CLAIM FROM ITS AUSTRALIAN WEBSITE IS PLAUSIBLE

The issue for the Court to decide on Defendant's motion to dismiss is whether the complaint plausibly alleges that the Defendant represents on its Australian website that a serving of milk is required. To decide that issue, the Court will examine the representations of Defendant on which the complaint relies. The Court will discuss only the specific statements from Defendant's Australian website cited by Plaintiff in her complaint, and disregard Plaintiff's general and conclusory allegation that the "caveat" regarding a requirement that a serving of low-fat milk be consumed with the Products appears "on page after page," R. 1 at 12 (¶ 31), of Defendant's websites in other countries. *See Brooks v. Ross,* 578 F.3d 574, 581 (7th

Cir. 2009) (factual allegations that are so sketchy that they fail to provide sufficient notice to defendants of the plaintiff's claim are not entitled to an assumption of truth). The Court also will overlook the fact that Plaintiff does not allege any information about where or how she saw the statements from the Australian website on which she bases her claims such that she can allege in good faith that the statements appeared on Defendant's Australian website at or before the date on which Plaintiff purchased the Products in question.[2]

First, Plaintiff cites to the following information that Plaintiff alleges can be found on Defendant's Australian website:

> As part of a breakfast meal, belVita Breakfast biscuits† provide carbohydrates that are continuously and gradually absorbed and released throughout the morning. This is achieved through a combination of specially selected biscuit ingredients and a special baking process which helps preserve the integrity of the starch in the grain. With the support of independent laboratories and experts, belVita Breakfast biscuits† are scientifically shown to regularly release carbohydrates over four hours, providing a sustained release of energy.

R. 1 at 12 (¶ 31). Plaintiff alleges "[t]he † notation leads to the statement, below the following chart, "belVita Breakfast plus a glass of low-fat milk":

---

[2] While Defendant does not present any argument on this issue, it would seem that timing is a relevant pleading issue here. *See Miller v. William Chevrolet/GEO, Inc.,* 762 N.E.2d 1, 14 (Ill. App. 2001) ("Unlike an action for misrepresentation under the [ICFA], where even innocent misrepresentations can support liability, an action for fraudulent concealment logically demands that defendants have prior knowledge of the information that they are alleged to have suppressed."); *Jett8 Airlines, PL v. Gen. Elec. Co*., 2014 WL 5488054, at *2 (Ill. App. Oct. 29, 2014) (dismissing complaint where "[p]laintiff generally claim[ed] that defendant was aware of the involved engine's need for redesign since the 1970's, but offer[ed] no further allegations to . . . connect the dots and provide the court with facts to draw a probable inference that defendant knew the involved engine needed to be redesigned and deliberately issued the deficient inspection recommendations to conceal this fact from plaintiff").



† belVita Breakfast plus a glass of low-fat milk.

*Id.* at 13 (¶ 32). Second, Plaintiff alleges the Australian website represents that "these delicious, crunchy biscuits are scientifically shown to provide 4 hours of sustained energy release* to keep you going all morning," with the asterisk stating, again, "*belVita Breakfast plus a glass of low-fat milk." The asterisk to the same disclaimer pops up again, according to Plaintiff, on the page in the statement "because they provide up to 4 hours of sustained energy release*, you'll be ready for whatever the morning brings." *Id.* (¶ 33). Third, Plaintiff alleges that the Australian website contains a link to a video in which Melanie McGrice, "an Accredited Practi[c]ing Dietitian and Director of Health Kick Nutrition," "explicitly states that 'several scientific studies have shown that belVita Breakfast Biscuits provide four hours of continuous carbohydrate release *when they are consumed with a glass of low-fat milk*." *Id.* at 13-14 (¶ 34) (emphasis in original).

Plaintiff alleges that the above representations on Defendant's Australian website constitute admissions by Defendant that "the Products' claims of offering, in a single serving, at least four hours of 'nutritious steady energy' all morning *does not occur . . . unless* the consumer pairs the Products with at least a serving of low-fat milk, sold separately." R. 1 at 3 (¶ 7) (emphasis added); *see also id.* at 8 n. 5 (representations on Australian website state that "at least four hours of 'nutritious steady energy all morning[ ]' *cannot be achieved* without at least a serving of law-fat milk") (emphasis added); *id.* at 10 (¶ 27) ("the studies on which [Defendant] purports to rely [show that this benefit] can *only* be achieved if the Breakfast Bites are eaten with at least a serving of low-fat milk (which is not included)") (emphasis added); *id.* at 11 (¶ 29) (Defendant's Australian website states that "one *must* pair the Products with at least low-fat milk in order to achieve the supposed energy benefits") (emphasis added).

It is self-evident from the representations themselves, however, that they in fact do not say that "one *must* consume the Products with low-fat milk in order to achieve four hours of energy." R. 29 at 8 (emphasis in original). For instance, it is Plaintiff who inserts the word "only" into the nutritionist's statement that the Products "provide four hours of continuous carbohydrate release when they are consumed with a glass of low-fat milk." And it is Plaintiff who presumes that the statement "belVita *plus* a glass of milk" *necessarily means* that a glass of milk is *required*. The actual statements do no more than refer to the fact that milk was consumed with the Products in the cited studies. The causal connection between the

glass of milk consumed in the studies and the effect of consuming the Products as reported in the studies is nowhere stated or necessarily implied. Instead, Plaintiff commits the classic error of inferring a causal connection from a scientific study which merely references the variables in the study without purporting to report any conclusions regarding the cause and effect relationship between the variables and the studies' results. In other words, while Plaintiff argues that the statements on Defendant's Australian website "must be taken at face value at this stage of the litigation," R. 29 at 8, the Court disagrees with Plaintiff that the "face value" of those statements is what Plaintiff repeatedly characterizes it as being.

Plaintiff argues that her characterization of the statements is "reasonable" and therefore "plausible." R. 29 at 8. The Court disagrees. The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. While the plausibility standard is not akin to a "probability requirement," the Supreme Court has said that the plausibility standard does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. That is, the "[f]actual allegations [of a complaint] must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, which means that the complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. If the allegations give rise to an "obvious alternative explanation," *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567), then the complaint may "stop[ ] short of the line between possibility and plausibility of 'entitle[ment] to

relief,'" *Twombly*, 550 U.S. at 557. In the context of the fraud allegations at issue here, the Court concludes that Plaintiff has alleged no more than the possibility that milk is required, but has not alleged facts sufficient to nudge her claims over the line between the possible and plausible entitlement to relief.

In addition, the fact that Plaintiff's claims sound in fraud tips the balance decidedly against a finding of plausibility. Plaintiff is correct that the cases discussing the requirements of Federal Rule of Civil Procedure 9(b) for pleading fraud with particularity typically address the "who, what, when, where, and how of the fraud.'" *Camasta*, 761 F.3d at 737 (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (internal quotations omitted)). Plaintiff further is correct that she has satisfied this aspect of Rule 9(b) by identifying the specific statements on the Products' packaging she contends are false, why she believes they are false, and how she was injured by those statements. But "the precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta*, 761 F.3d at 737. In the context of this case, the Court concludes that Plaintiff must do more than allege "the neutral facts necessary to identify the transaction." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (footnote omitted). In addition to providing a defendant with notice of the precise misconduct with which it is charged, *i.e.,* the neutral facts of who, what, where, when, and how, Rule 9(b) also serves to protect a defendant from the "potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*,

631 F.3d at 442; *see also U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014) ("a public accusation of fraud can do great damage to a firm before the firm is (if the accusation proves baseless) exonerated in litigation"); *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir. 1999) ("A plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate.") (internal quotation marks and citation omitted).

The plausibility standard of Rule 8 serves a similar function. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 411 (7th Cir. 2010) (Posner, J., dissenting in part) ("[b]ehind both *Twombly* and *Iqbal* lurks a concern with asymmetric discovery burdens and the potential for extortionate litigation"). As the Seventh Circuit has explained, "[i]t is of course true that many pleading-standards cases both before and after *Twombly* and *Iqbal* refer to 'notice,' but the point is that it is *necessary* to give the defendants notice of the claims against them, not that giving the defendants notice is *sufficient* to state a claim. By emphasizing a plausibility requirement, *Twombly* and *Iqbal* obviously require more than mere notice. When ruling on a motion to dismiss, the court must review the complaint to determine whether it contains enough facts to raise a reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged. An inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims." *Adams,* 742 F.3d at 728 (internal quotation marks and citations omitted) (emphasis in original).

Thus, the Court's evaluation of the complaint takes into account both Rule 8 and Rule 9(b). *See Grenadyor,* 772 F.3d at 1106 ("The requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible."). The Court also must take into consideration the manner in which Illinois courts have interpreted the pleading requirements for a claim under the ICFA. The Illinois Supreme Court has held that the facts alleged in a complaint attempting to show fraud under the ICFA must show not just the mere possibility of fraud, but that fraud is a "*necessary or probable inference* from the facts alleged." *People ex rel. Hartigan v. E & E Hauling, Inc.,* 607 N.E.2d 165, 174 (Ill. 1992) (emphasis added). Illinois imposes this "heightened burden" on pleading fraud not only "to fairly apprise defendants of what they will be called upon to answer," but also, like other courts, to "weed out unmeritorious suits, and protect defendants from harm to their reputations. *Jett8 Airlines, PL,* 2014 WL 5488054, at *2. Moreover, while an omission of material fact can satisfy the requirements of pleading fraud under the ICFA, Illinois courts are "always watchful that the Act not be used to transform nondeceptive and nonfraudulent omissions into actionable affirmations." *Miller*, 762 N.E.2d at 14 (internal quotation marks and citation omitted). An omission is actionable only "where it is employed as a device to mislead." *Pappas v. Pella Corp.,* 844 N.E.2d 995, 998 (Ill. App. 2006). Thus, Illinois courts have held that an omission is not actionable as fraud if it gives rise to "an incomplete" as opposed to an affirmatively "false impression." *Phillips*, 19 N.E.3d at 1030 ("while the information published by DePaul could certainly have been more

specific about the types of employment included in the reported percentage of employed graduates, plaintiffs have identified no affirmative misrepresentation by DePaul of those figures"). Plaintiff has not alleged facts from which the Court can plausibly infer that Defendant admitted in statements made on its Australian website that milk is required such that it can be said that Defendant fraudulently omitted a material fact from the Products packaging with the intent to deceive consumers. Therefore, Plaintiff's ICFA claim must be dismissed.

E. THE INJURY REQUIREMENT UNDER THE ICFA

Plaintiff argues that it "is entirely beside the point" that "she does not allege that 'she experienced anything less than several hours of steady energy after consuming' the Products [quoting Defendant's Motion at 6]," because "Plaintiff's false advertising claims arise at the point of sale." R. 29 at 7 n. 5. Plaintiff's reliance for this argument, however, on *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), and *Muir*, 983 F. Supp. 2d 980, is misplaced. In both cases, the courts were ruling on a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction rather than a Rule 12(b)(6) motion to dismiss.

In *Aqua Dots*, the plaintiffs were purchasers of toy beads that caused illness when ingested. The defendant issued a recall in which it offered replacement kits or other toys, although, when asked, it provided refunds. 654 F.3d at 750. The plaintiffs were purchasers whose children were not injured by the toy, and who did not ask for a refund. The Seventh Circuit held that "[t]he plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the

beads posed to children," and that a "financial injury creates standing." *Id.* at 751. In *Muir,* the plaintiff alleged a claim of false advertising under the ICFA based on the defendant's representation that its product, Diaper Genie II Elite, was "Proven #1 in Odor Control." 983 F. Supp. 2d at 983. The defendant argued the plaintiff did not have standing because the complaint did not contain any facts about how the product failed to perform for plaintiff as represented. *Id.* at 987. The district court rejected this standing argument on the basis of *Aqua Dots*, finding that the allegation that the plaintiff "would not have purchased the Diaper Genie II Elite and certainly would not have paid a premium price" was sufficient to establish an injury-in-fact for purposes of constitutional standing. *Id.* at 986.

Plaintiff argues that her similar allegations that she would not have purchased Breakfast Biscuits or else would not have paid as much for them had she known that a serving a low-fat milk was required, *see* R. 1 at 4-5 (¶ 12), are sufficient here. But Defendant does not challenge Plaintiff's standing under Rule 12(b)(1) to pursue her false advertising claim. The question of whether Plaintiff has alleged an injury cognizable under the ICFA "is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case." *Jackson v. Sedgwick Claims Mgmt. Servs., In*c., 731 F.3d 556, 563 n. 2, 581 (6th Cir. 2013) (internal quotation marks and citation omitted); *see FMC Corp. v. Boesky*, 852 F.2d 981, 995 (7th Cir. 1988) (Ripple, J., concurring) ("In determining whether there is standing, the court assumes *arguendo* that [the appellant] [has] pleaded and could prove a violation of substantive law, and asks only whether [it]

[has] alleged a concrete injury and a sufficient casual relationship between the injury and the violation.'") (internal quotation marks and citations omitted). In *Davis v. Passman*, 442 U.S. 228, 239 n. 18 (1979), the Supreme Court noted that the question of whether a plaintiff has standing to bring suit, and thus whether the court has jurisdiction to hear the controversy, is separate from the question of whether a plaintiff has a cause of action, and that constitutional standing may exist even where a cause of action does not. Therefore, the fact that Plaintiff has standing to sue based on her alleged financial injury does not necessarily mean she has suffered an injury sufficient to make her claim cognizable under the ICFA.

Under the ICFA, a plaintiff who alleges deceptive advertising about the effectiveness of a product has not suffered an injury if she "believed the [product] [was] effective and never complained to anyone that [it] did not work." *Gredell*, 854 N.E.2d at 757 ("If plaintiff got the relief from taking the [product], what is his damage?"); *see also Phillips*, 19 N.E.3d at 1034 ("plaintiffs received exactly what they paid for . . . and, thus, have failed to show any actual damages"). In cases where the plaintiff's claim of financial injury under the ICFA has been upheld as the basis for damages, the complaint also alleged that the plaintiff experienced the product not working. *See, e.g., Greifenstein*, 2013 WL 3874073, at *7 (distinguishing between allegations of damages and allegations of injury, and holding that, "[*i*]*n light of the fact that Greifenstein alleges that the serum simply did not work for her at all*, the allegation that she would not have bought the serum is enough to allege (proof would be another matter) actual damages") (emphasis added). Here, Plaintiff

has alleged constitutional standing and a basis for calculating her damages, but has provided no factual basis for inferring she was injured by Defendant's alleged deceptive advertising by not experiencing the four hours of "nutritious steady energy" promised on the Product's packaging.

## II.   BREACH OF WARRANTY

"'To state a claim for breach of express warranty, plaintiff[ ] must allege that (1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) seller guaranteed that the goods would conform to the affirmation or promise.'" *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 891-92 (N.D. Ill. 2014) (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999)). The affirmation of fact or promise alleged in the complaint is the "nutritious steady energy" representation made on the Products' packaging. Plaintiff alleges that Defendant breached this warranty, but as previously discussed, does not allege any facts to support that claim. Accordingly, Plaintiff's breach of warranty claim must be dismissed.

## III.   UNJUST ENRICHMENT

"[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (emphasis in original). Plaintiff's unjust enrichment claim is predicated on the same allegations of deceptive advertising as Plaintiff's ICFA and

breach of express warranty claims. Therefore, just as Plaintiff's ICFA and breach of express warranty claims fail, Plaintiff's unjust enrichment claim fails as well. *See Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (plaintiff's unjust enrichment claim "will stand or fall" with related claims of "the same [alleged] improper conduct").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, R. 16, is granted. Defendant asks that the Court dismiss the complaint with prejudice because Defendant says it is clear that the complaint cannot be saved by any amendment. "A court is free to dismiss a complaint with prejudice when the plaintiffs have been given opportunities to amend, but fail to do so." *Griffin v. Milwaukee Cnty.*, 369 Fed. App'x 741, 743 (7th Cir. 2010). Plaintiff has had no previous opportunities to amend. The Court cannot say beyond doubt that any amendments to the complaint would be futile. Accordingly, Plaintiff is granted thirty days from the date of this order to file an amended complaint, and if, after that time, Plaintiff has not filed an amended complaint, the Court will enter an order dismissing the case with prejudice.

ENTERED:

Thomas M. Durkin
United States District Judge

Dated: March 31, 2016