## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JUDY SPECTOR, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | Case No: 15 C 4298 |
| | ) | Judge: Thomas M. Durkin |
| Plaintiff, | ) ) | Magistrate Judge Susan Cox |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| MONDELĒZ INTERNATIONAL, INC., | ) ) | **PUBLIC REDACTED** |
| Defendant. | ) | **VERSION** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Judy Spector ("Spector" or "Plaintiff"), by and through her undersigned attorneys, brings this action, on behalf of herself and all others similarly situated, against Defendant Mondelēz International, Inc. ("Defendant" or "Mondelēz") and upon personal knowledge as to her own acts and status, and upon information and belief as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1.     Defendant manufactures, distributes and sells belVita Breakfast Biscuits ("Breakfast Biscuits" or "Products") in Illinois and throughout the United States.

2.     Plaintiff brings this action individually and on behalf of proposed classes, as more fully defined below (collectively referred to as the "Class" or the "Classes"), seeking to redress Defendant's pervasive pattern of fraudulent, deceptive, false, and otherwise improper advertising, sales and marketing practices regarding its Products advertised as providing, through a single 50g serving of four biscuits eaten alone, four hours of "nutritious steady energy."

1

3.     A single serving of Breakfast Biscuits, sold in the cookie aisle, consists of 230 calories, 18-20 grams of whole grain, 3 grams of dietary fiber, 10-13 grams of sugar, 3-4 grams of protein and 8 grams of fat per serving.  "Whole grains or foods made from them contain all the essential parts and naturally-occurring nutrients of the entire grain seed in their original proportions… This definition means that 100% of the original kernel - all of the bran, germ, and endosperm - must be present to qualify as a whole grain."[1] Whole grains are carbohydrates.

4.     Carbohydrates (sugar and starch) are one of the main types of nutrients along with fats and proteins.  Carbohydrates are the most important source of energy for one's body.  The digestive system changes carbohydrates into glucose, also known as blood sugar.  The body uses this sugar for energy for the cells, tissues and organs.  Any extra sugar is stored in the liver and muscles for when it is needed.  Carbohydrates are labeled simple or complex, depending on their chemical structure.  Simple carbohydrates include sugars found naturally in foods such as fruits, vegetables, milk, and milk products.  They also include sugars added during food processing and refining.  Complex carbohydrates include whole grain breads and cereals, starchy vegetables and legumes.[2]

5.     All carbohydrates provide energy and whole grains are a source of energy. Kilocalories, regularly known as calories, are a unit of energy in food.[3]  The nutritional components of food, such as carbohydrates, fats and protein, provide energy in the form of calories.[4]

---

[1] *See* http://wholegrainscouncil.org/whole-grains-101/definition-of-whole-grains (last accessed May 12, 2016).
[2] *See* https://www.nlm.nih.gov/medlineplus/carbohydrates.html (last accessed May 12, 2016).
[3] *See* https://www.nlm.nih.gov/medlineplus/definitions/nutritiondefinitions.html (last accessed May 12, 2016).
[4] *See id.*

6.     However, as more fully alleged herein, in an attempt to differentiate itself from other whole grain breakfast items, breads, snack products and cereals, Defendant falsely advertises and markets a single serving of the Breakfast Biscuits as providing consumers four hours of "nutritious steady energy" when eaten alone, as conveyed on the front of the package.  Defendant also charges a price premium for this false promise of four hours of "nutritious steady energy" over other competitor products that do not make a specific four-hour claim.

7.     Defendant's representation is false for a myriad of reasons.  *First,* every individual has a unique response in digesting and metabolizing food and an individual's energy derived from the digestive process is unique and dependent on, among other things, a person's age, size, gender, activity level and individual body chemistry.  A person's energy level in response to food consumed is further affected by what else, if anything, is consumed with the product.  A person's hydration level may also affect his/her level of energy.  Therefore, Defendant's specific promise to the general public of sustained energy for a minimum of four hours is false, misleading and reasonably likely to deceive.

8.     *Second,* the 50 gram serving size of the Products sold in the United States, when eaten by itself, does not provide four hours of "nutritious steady energy" because, as detailed *infra,* ██████████████████████████████████████ ███████████████████████████.

9.     *Third*, the 230 calories contained in each serving size of four Breakfast Biscuits is insufficient by itself to guarantee four hours of "nutritious steady energy" to all consumers, irrespective of their age, gender, activity level and body size.  Defendant's

specific promise that the Breakfast Biscuits could do so is false, misleading and reasonably likely to deceive.

10.     Despite the fact that, as described above, a single serving of the Breakfast Biscuits alone does not provide four hours of "nutritious steady energy," Defendant promoted and continues to promote the Products as convenient for on-the-go portability. This is inconsistent with the fact that one cannot obtain the claimed four hours of "nutritious steady energy" by eating the Products alone.

11.     Defendant has spent a significant amount of money and employed numerous methods to convey to consumers throughout the United States, including in Illinois, its deceptive, false and misleading message about the Products, including through its packaging and website through which it sells the Products directly to the public.

12.     Defendant has achieved great success in misleading its customers into buying these Products, achieving a 1.8% share of the United States cookie market, with $66 million in sales, within a year of the Breakfast Biscuits' 2012 release, growing to $100 million in 2013.[5]  Over 1 billion Breakfast Biscuits have reportedly been sold in the United States.[6]

13.     As a result of Defendant's deceptive, false and misleading claim on the Products' packaging, consumers in the U.S. – including Plaintiff and other members of the proposed Class – have purchased the Products reasonably believing that the Products had special characteristics that would supply four hours of nutritious steady energy when

---

[5] *See* http://www.foodnavigator-usa.com/Manufacturers/BelVita-positions-mini-biscuits-to-take-a-bite-out-of-breakfast-market (last accessed on May 12, 2016).
[6] *See* https://blog.instant.ly/blog/2014/08/belvita-how-a-biscuit-took-breakfast-by-storm/ (last accessed on May 12, 2016).

eaten alone, when they do not. Plaintiff did not obtain the promised four hours of nutritious steady energy after consuming the Breakfast Biscuits. Had Defendant not made the specific claim of four hours of nutritious steady energy when the Products were eaten alone, Plaintiff would not have purchased the Breakfast Biscuits, or would not have paid what she did. Defendant was able to charge more than what its Products would have been worth had Defendant disclosed the truth or not made the promise.

14. Each consumer has been exposed to the same material misrepresentations and/or omissions which are prominently displayed on the Products' packaging, prior to purchasing the Products. Through the Products' box, as confirmed on the Products' website, Defendant falsely conveys the promise to consumers that a serving of the Products eaten alone would provide at least four hours of "nutritious steady energy," which is untrue.

15. Plaintiff and other members of the Class have sustained injuries in fact and lost money caused by Defendant's conduct as alleged herein.

16. Plaintiff Spector brings this action on behalf of herself and other similarly situated purchasers of the Products in the United States alleging violations of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and breach of express warranty or, in the alternative, unjust enrichment, and seeking injunctive and declaratory relief.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of Plaintiff and the proposed Class members exceed $5,000,000,

exclusive of interest and costs, and there is diversity of citizenship between at least one member of the proposed Class and Defendant.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this district and because Defendant:

a.   has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

b.   has its headquarters in this district;

c.   does substantial business in this district; and

d.   is subject to personal jurisdiction in this district.

## THE PARTIES

19.     Plaintiff Spector is a resident of Buffalo Grove, Illinois.  She purchased Cinnamon Brown Sugar Breakfast Biscuits two times for herself and her family on January 11, 2015, and February 15, 2015, from a Costco store located in Lake Zurich, Illinois.  Plaintiff paid $10.49 on January 11, 2015 and $10.99 on February 15, 2015 for a box of 25 packs of four Breakfast Biscuits in each pack.  Prior to these purchases, Plaintiff viewed and considered Defendant's representation on the Product box which conveyed Defendant's false, misleading and deceptive claims regarding the Breakfast Biscuits' ability to offer, through a single serving package of the Products eaten alone, at least four hours of "nutritious steady energy."  Plaintiff viewed the clock icon on the box (shown and discussed below) along with the claim of "nutritious steady energy all morning" and understood that to mean that she would receive four hours of "nutritious steady energy."  Plaintiff also reasonably believed that the four hours of nutritious steady

6

energy would be provided from the Products alone due to the front of the packaging portraying the Products alone.  Plaintiff relied on Defendant's false, misleading and deceptive claims in purchasing Breakfast Biscuits.

20.     Plaintiff Spector consumed the Breakfast Biscuits either by themselves, with water, or with coffee, and after consuming the Breakfast Biscuits did not obtain the promised four hours of nutritious steady energy.

21.      Had Defendant disclosed the truth to Spector about the Breakfast Biscuits, she would not have purchased them or would not have paid what she did.  As a result of her purchase she suffered injury in fact and lost money.

22.     Defendant Mondelēz is a corporation under Virginia law with headquarters in Deerfield, Illinois.  Mondelēz was formerly known as Kraft Foods Inc. until in or around September 2012.  Mondelēz is the parent company of Nabisco as well as other snack brands such as Cadbury, Toblerone and Oreo cookies, and Nabisco's logo is displayed on the front of each box of the Products.  At least some of the Products' packaging notes that the Products are distributed by Mondelēz Global LLC, also a wholly-owned subsidiary of Defendant Mondelēz.

23.     Defendant's 10-K for the fiscal year ending December 31, 2015, stated that the company, "one of the world's largest snack companies," had "global net revenues of $29.6 billion and earnings from continuing operations of $7.3 billion in 2015."[7] Defendant's largest sales in 2015 stemmed from "Biscuits – Cookies and crackers," (34% of consolidated net revenues).[8]

---

[7] Available at http://ir.mondelezinternational.com/secfiling.cfm?filingID=1193125-16-469394&CIK=1103982 (last accessed on May 12, 2016).
[8] *Id.*

**FACTUAL ALLEGATIONS**

23.     In 2011, Defendant introduced a new line of products in the United States, including Illinois, called belVita Breakfast Biscuits. Defendant manufactures and distributes the Breakfast Biscuits in the United States and Illinois. The Breakfast Biscuits are offered in various flavors in the United States, including Apple Cinnamon, Cinnamon Brown Sugar, Golden Oat and Blueberry, which are substantially similar in ingredients and nutritional value. Breakfast Biscuits are also offered in numerous other countries including the United Kingdom, France and Australia.

24.     Defendant advertises the Products, through its packaging and website, as a "breakfast biscuit" capable of providing, through only a single serving alone, at least four hours of "nutritious steady energy."

25.     A single serving of Breakfast Biscuits, sold in the cookie aisle, has 230 calories, and consists of 18-20 grams of whole grain, 3 grams of dietary fiber, 8 grams of fat per serving and only 3-4 grams of protein.

26.     Carbohydrates (sugar and starch) are one of the main types of nutrients along with fats and proteins. Carbohydrates are the most important source of energy for one's body. The digestive system changes carbohydrates into glucose (blood sugar). The body uses this sugar for energy for the cells, tissues and organs. Any extra sugar gets stored in the liver and muscles for when it is needed. Carbohydrates are labeled simple or complex, depending on their chemical structure. Simple carbohydrates include sugars found naturally in foods such as fruits, vegetables, milk, and milk products. They also include sugars added during food processing and refining. Complex carbohydrates include whole grain breads and cereals, starchy vegetables and legumes. All

carbohydrates provide energy and whole grains are complex carbohydrates which are a source of energy.[9]

27.     However, in order to differentiate itself from other whole grain products and cereals, Defendant conveys the message through the Products' packaging that the Breakfast Biscuits provide four hours of "nutritious steady energy" when eaten alone.  This claim is false for the reasons discussed *infra*.

28.     The Breakfast Biscuits' box, to which Plaintiff and all customers were and are exposed prior to purchasing and/or consuming the Breakfast Biscuits, contains misrepresentations and omissions.  The front of each version of the box, at least since Plaintiff Spector first purchased the Products in January 2015, clearly conveys the message to a reasonable consumer that the "belVita Breakfast" is a "Breakfast Biscuit" that offers, when eaten alone, four hours of "nutritious steady energy."

29.     The 25-pack package of the Products purchased by Spector included the prominently displayed statement "nutritious steady energy all morning," shown below, and included a clock graphic with two equal size hands pointing at both eight o'clock and twelve o'clock (*i.e.* 8 a.m. to noon, in the context of "all morning"), and a swooping clockwise arrow representing the duration of a four-hour period of time between 8 a.m. and noon:

---

[9] *See* https://www.nlm.nih.gov/medlineplus/carbohydrates.html (last accessed May 12, 2016).

9





30.     This was also the case for smaller 5-pack packages of Breakfast Biscuits

available at or around the time that Spector purchased the Products:



31.     Beginning at some point in 2015, the packaging for the Breakfast Biscuits was modified to even more clearly state that the Breakfast Biscuits alone provided "4 hours of nutritious steady energy":



32. The updated packaging utilizes a substantially similar clock icon as is on the box purchased by Spector denoting the four hours of nutritious steady energy, although the updated packaging contains the phrase "4 Hours" as well.

33. The consumer-facing front of the Products' packaging also clearly portrays the Breakfast Biscuits alone, in the single serving size of four biscuits, conveying the message to the reasonable consumer that the single serving of Breakfast Biscuits will provide the consumer, when eaten alone, "nutritious steady energy" for four hours. Absent from the Products' packaging is any asterisk or qualifying notation explaining that a single serving of the Breakfast Biscuits eaten alone *cannot* provide this promise. The Products' packaging would lead a reasonable consumer to believe that one would obtain the promised four hours of nutritious steady energy from eating *only* a serving of the Products.

34. Defendant is and was aware that it cannot make the claim to the consuming public that the Breakfast Biscuits alone will supply four hours of nutritious steady energy for the following reasons:

**INDIVIDUAL DIFFERENCES**

35. Every individual has a unique response in digesting and metabolizing food, and an individual's energy response to the digestive process is unique and dependent on, among other things, a person's age, size, gender, activity level and his or her individual body composition. A person's energy level in response to consuming a food is further affected by what, if anything else, is consumed (liquid and/or solid food) with the product. Therefore, the blanket claim of four hours of "nutritious steady energy" from eating the Products alone is false.

36. Recent clinical studies have demonstrated that there is a high interpersonal

12

variability in an individual's metabolic response to food. A recent reported study that "continuously monitored week-long glucose levels (blood sugar) in an 800-person cohort [and] measured responses to 46,898 meals" found that when individuals are given the exact identical meal there is high variability in the individual's response to the meals, "suggesting that universal dietary recommendations may have limited utility."[10]

37.     This study discussed research done by others acknowledging a variety of factors that affect interpersonal differences in postprandial (post-meal) glycemic responses ("PPGRS")[11] which include genetics, lifestyle, insulin sensitivity and exocrine pancreatic and glucose transporters activity levels. It also hypothesized that gut microbiota may also be a factor in these interpersonal differences.[12]

38.     Postprandial glycemic response is a metric that examines the concentration of glucose in the blood after meals. When tracking the postprandial glycemic response on a graph, the glycemic index ("GI") is the area under the postprandial blood glucose curve.[13] In other words, GI is the change in blood glucose after a meal and can be used to rank carbohydrate foods based on how they affect blood glucose levels.[14]

39.     High GI foods greatly affect blood glucose levels, while low GI foods

---

[10] *See* http://www.ncbi.nlm.nih.gov/pubmed/26590418 (last accessed May 12, 2016).

[11] The metric of postprandial glycemic response is relevant herein as this is one of the metrics used by Defendant to make its claim of four hours of nutritious steady energy.

[12] *See* http://www.cell.com/cell/fulltext/S0092-8674(15)01481-6 (last accessed May 12, 2016).

[13] "Glycaemic Response" (available at http://www.oatsandhealth.org/oats-and-health-oats-and-health-28/glycaemic-response-oats-and-health-30) (citing Jenkins et al., "Depression of the glycaemic index by high levels of beta-glucan fibre in two functional foods tested in type 2 diabetes" (Eur. J. Clin. Nutr. 56, pp. 622-628) (2002)) (last accessed May 12, 2016).

[14] "The Glycemic Index debate: Does the type of carbohydrate really matter?" Diabetes Forecast, September 2005 issue (available at https://web.archive.org/web/20070214135006/http://www.diabetes.org/glycemic-index.jsp) (last accessed May 12, 2016).

produce a smaller effect.[15]

40.     However, GI response differs from one person to the next, and even from day to day, depending on blood glucose levels, insulin resistance and other factors.[16]

41.     GI response also differs when a food is eaten alone versus with other foods as part of a complete meal.[17]

42.     This comprehensive study's "results demonstrate[d] high interpersonal variability in PPGRs to the *same food*,"[18] thereby demonstrating that any promise to the consuming public of four hours of nutritious steady energy is false.

43.     Internal documents from Defendant acknowledge that ███████████. ████████████████████████████████████████. Defendant's internal documents reveal that ███████████████████████████████████████████████████████████████████████████ ████."[19]

44.     Defendant also acknowledges ███████████████████████ █████████████████. For example, Defendant's internal documents state that ███████████████████████████████."[20]

45.     Defendant's internal documents also recognize that ██████████ ███████████████████████████████████████████████████████

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *See* http://www.cell.com/fulltext/S0092-8674(15)01481-6 (emphasis added) (last accessed May 12, 2016).
[19] *See* Ex. A (MONDELEZ_SPECTOR00057420) at 9.
[20] *See* Ex. B (MONDELEZ_SPECTOR00057445-57458) at 8.



[REDACTED]," [21]

46.     Defendant's internal documents also acknowledge the fact that [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]. [22]

47.     Despite these individual differences among the consuming public in the United States, Defendant falsely proclaims its one size fits all claim of providing four hours of nutritious steady energy from the Products alone without a disclaimer of any kind.

### THE BREAKFAST BISCUITS EATEN ALONE DO NOT PROVIDE FOUR HOURS OF NUTRITIOUS STEADY ENERGY

48.     Despite what is claimed on the Products' packaging, the 50g serving size of Breakfast Biscuits sold in the United States do not provide four hours of "nutritious steady energy" when eaten alone.

49.     In 2013 Defendant performed the [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] [23] [REDACTED]

[REDACTED]

[REDACTED]

---

[21] *See* Ex. C  (MONDELEZ_SPECTOR00000317) at 9.
[22] See Ex. D (MONDELEZ_SPECTOR00002322) at 1 ( [REDACTED]

[REDACTED] ").
*See* Ex. E (MONDELEZ_SPECTOR00000048) at 4.

████████████████████████████████[24] ███████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████.

50.     Another of Defendant's internal documents from October 2014 ███████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████[25]

51.     In determining whether █████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████.[26] █████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████[27]

---

[24] *Id.* at 25.
[25] *See* Ex. F (MONDELEZ_SPECTOR00061357) at 31 (emphasis added).
[26] *See* Ex. G (MONDELEZ_SPECTOR00060983-60986) at 2 (emphasis in original).
[27] *Id.* (emphasis in original) (citation omitted).

52.     Despite these facts *nowhere* on *any* of the Products' packaging does Defendant alert consumers that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, eating the 50g portion of Breakfast Biscuits alone would not provide four hours of nutritious steady energy.

53.     And while the back of the box (or the top of the box in the wholesale club 25-package versions) provides, as discussed further *infra*, a *suggestion* that one *could* "[e]njoy" the Breakfast Biscuits "as a part of a balanced breakfast with a serving of low-fat dairy and fruit," the Products' packaging utterly fails to inform consumers that Defendant's own research showed that eating the Products alone would not provide four hours of nutritious steady energy.  This renders the claim false, deceptive, and misleading.

54.     Defendant's portrayal of the Products as portable and convenient furthers the misrepresentation that the Products eaten alone can provide four hours of nutritious steady energy.

55.      In the United States, Defendant trumpets the ability to grab a package of the Products on the go for a portable and convenient meal.  But Defendant's emphasis of on-the-go portability is inconsistent with the fact that the Products eaten alone cannot provide four hours of nutritious steady energy.

56.     The fact that Defendant intends reasonable consumers to understand that the Products provide convenience and portability is evidenced by, for example, belVita's senior brand manager, who stated that belVita "hear[s] from customers all the time about the *time-crunch* they face, especially in the morning.  They are looking for *convenient*,

nutritious, *on-the-go* options that will keep them fueled to do the things they do in the morning."[28]

57.   In a section on Defendant's United States website titled "Benefits of the Biscuit,"[29] Defendant prominently displays a link to a video of Dr. Connie Guttersen, "a mom [and] internationally renowned dietitian from the Culinary Institute of America and the *New York Times* bestselling author of *The Sonoma Diet*."  In the video Dr. Guttersen makes the following statements emphasizing the Products' ability to, alone, provide all-morning steady energy on the go:

- "Breakfast is the most important meal of the day.  Whether you are *going to work, school or the gym*, you need energy.  Well, belVita is perfect for your *on-the-go lifestyle* since it's *convenient* and nutritious.  One of the truly unique things about belVita is the *nutritious sustained energy it provides for the whole morning*.  This sustained release of energy is the result of two things.  The first is a combination of specially selected ingredients.  The second is a carefully controlled baking process that preserves the integrity of the grain so carbohydrates actually take longer to break down and digest.  This means your body has steady fuel for the whole morning."

- "Each individual package of four belVita biscuits is *specially portioned for breakfast* so you can feel good about eating *just the right amount*."

- "It is *portable*, nutritious and it tastes absolutely great."

(Emphasis added).  Dr. Guttersen nowhere states that the Products eaten alone cannot provide four hours of nutritious steady energy.

58.   In fact *nowhere* on Defendant's U.S. website or the Products' packaging does Defendant alert U.S. consumers to the fact that the Products eaten alone cannot provide four hours of nutritious steady energy.

---

[28]http://www.foodnavigator-usa.com/Manufacturers/BelVita-positions-mini-biscuits-to-take-a-bite-out-of-breakfast-market (emphasis added) (last accessed on May 12, 2016).
[29] *See* http://www.belvitabreakfast.com/benefits#sustained_energy (last accessed on May 12, 2016).

59.     In order to not undermine the Products' advertised portability and convenience, the Products' packaging only vaguely alludes to the fact that additional foods may be somehow beneficially paired with the Products without ever clearly explaining that the claimed benefit of four hours of nutritious steady energy is *not* available through a single serving of the Breakfast Biscuits alone.

60.     Instead the top of the Breakfast Biscuits' 25-package box simply states that "[n]utrition experts recommend eating a balanced breakfast to start the day off right. Eating foods rich in whole grains along with a piece of fruit and a serving of fat-free or low fat dairy provide you with a delicious and nutritious breakfast." This does *not* provide consumers with the crucial fact that the Products eaten alone do not provide four hours of nutritious steady energy.

61.     Neither does the packaging for the 5-package box of Breakfast Biscuits, which merely states in small text on the side of the packaging that "[n]utrition experts recommend eating a balanced breakfast to start the day off right. Eating foods rich in whole grains along with a piece of fruit and a serving of fat-free or low fat dairy provide you with a delicious and nutritious breakfast." The back of the box further suggests that one "[e]njoy belVita Breakfast Biscuits as a part of a balanced breakfast with a serving of low-fat dairy and fruit." This is in no sense a notification that ██████████████, and a reasonable consumer would read the Products' packaging as a whole to convey the message that the Products alone, provided in convenient, single-serving packs, would provide the claimed benefits.

62.     Because Defendant wished to highlight the purported portability and convenience of the Breakfast Biscuits, it intentionally avoided informing U.S. consumers the truth that the Breakfast Biscuits alone would not provide four hours of steady energy. For example, a marketing presentation created for Defendant in December 2014 stated that ███████████████████████████████████████████████████████████ ██████████████████████[30]  Therefore Defendant intended that Plaintiff and the public rely on its deceptive false promise of four hours of nutritious steady energy from the Products when eaten alone.

### A SINGLE SERVING OF BREAKFAST BISCUITS CANNOT BE GUARANTEED TO PROVIDE FOUR HOURS OF NUTRITIOUS STEADY ENERGY WHEN EATEN ALONE DUE TO INSUFFICIENT CALORIES

63.     Kilocalories, regularly known as calories, are a unit of energy in food.[31] Nutritional components in food such as carbohydrates, fats and protein provide food energy, which is measured in calories.[32]

64.     Every person has a daily estimated energy requirement ("EER") dependent upon his or her gender, age, weight, height, activity level, genetics and other factors.[33]  The daily energy needed to sustain cell metabolism and associated life processes, extrapolated to a 24-hour period, is known as the basal energy expenditure ("BEE").[34]  "The BEE is positively correlated with body size and composition and is easily predicted from age, sex, and height…"[35]

---

[30] *See* Ex. H (MONDELEZ_SPECTOR00028206) at 12.
[31] *See* n. 3.
[32] *See id.*
[33] *See* Gerrior, et al., *An Easy Approach to Calculating Estimated Energy Requirements*, Prev. Chronic Dis. 2006 Oct. (published Sept. 15, 2006) (available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1784117/) (last accessed May 12, 2016).
[34] *Id.*
[35] *Id.*

65.     According to the National Institute of Health ("NIH"),[36] men aged 19-50 who lead a moderately active lifestyle[37] require anywhere between 2,400 and 2,800 calories per day.  Men aged 19-50 who lead an active lifestyle[38] require between 2,800 and 3,000 calories per day.  Likewise, women aged 19-50 who lead a moderately active lifestyle require anywhere between 2,000 and 2,200 calories per day.  Women aged 19-50 who lead an active lifestyle require between 2,200 and 2,400 calories per day.[39]

66.     In other words, calories are a measure of energy, and a person's energy balance is the balance of calories consumed through eating and drinking compared to calories burned through physical activity.[40]  Calorie recommendations, as set forth above, are calibrated to a "reference size" as determined by median height and weight within a certain body mass index ("BMI") range.[41]  BMI is an estimate of body fat calculated from height and weight.[42]

67.     Approximately one-third of a person's daily energy requirements, as measured by calories, should be consumed at breakfast.[43]  Depending upon where one

---

[36] *See* http://www.nhlbi.nih.gov/health/health-topics/topics/dash/followdash (last accessed May 12, 2016); *see also* http://www.nhlbi.nih.gov/health/educational/wecan/healthy-weight-basics/balance.htm (last accessed May 12, 2016).

[37] Per NIH definitions, a "moderately active lifestyle" is one in which a person does physical activity equal to walking about 1.5 to 3 miles a day at 3 to 4 miles per hour, plus light physical activity.  *See id.*

[38] Per NIH definitions, an "active lifestyle" is one which a person does physical activity equal to walking more than 3 miles a day at 3 to 4 miles per hour, plus light physical activity.  *See id.*

[39] Per NIH guidelines, even men and women aged 19-50 who live sedentary lifestyles, i.e., including only the light physical activity associated with day-to-day life, still require between at least 1,800 and 2,400 calories per day.  *See id.*

[40] *See id.*

[41] *Id.*

[42] *See* http://www.nhlbi.nih.gov/health/health-topics/topics/obe/diagnosis (last accessed May 12, 2016).

[43] *See, e.g., Your Best Breakfast Ever*, U.S. News & World Report, published May 29, 2015 (available at http://health.usnews.com/health-news/health-wellness/articles/2015/05/29/your-best-breakfast-ever) (last accessed May 12, 2016) ("You can reap the same benefits by getting between one-fourth and one-third of your daily calories at breakfast, says Dr. Brian Quebbemann, a bariatric surgeon at Chapman Medical Center in California. Depending on your height, weight

falls on the caloric intake scale, experts recommend that anywhere between 400 and 650 calories should be consumed at breakfast. Particularly active individuals, such as those who live busy, on-the-go lifestyles requiring additional physical activity, should consume more according to NIH guidelines. *Id.*

68.     The Products alone contain 230 calories per serving.

69.     Because adults with moderately active or active lifestyles must consume anywhere between 2,200 and 3,000 calories per day depending on their gender, size and other factors, 230 calories is no more than half and often less than one-third of the amount of calories that a person must consume in order to obtain sufficient energy at breakfast.

70.     In other words, an adult person of any activity level, body size and gender cannot consume a single pack of the Products at breakfast and be guaranteed to obtain sufficient energy from the 230 calories provided in order to gain the benefits of steady energy for four hours.

71.     Defendant acknowledges in its internal documents that a ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████[44].

---

and activity level, that's about 400 to 600 calories..."); *see also We Rate the Fast-Food Breakfasts*, South Florida *Sun-Sentinel*, published Feb. 16, 2006 (available at http://articles.sun-sentinel.com/2006-02-16/features/0602140183_1_fast-food-breakfasts-calories-fiber) (last accessed May 12, 2016) ("Jennifer Collins, a nutritionist at Holy Cross Hospital's Zachariah Family Wellness Pavilion, stresses the importance of a rounded breakfast… She explains that one third of daily calories should come from breakfast or about 650 calories for someone who is on a 2,000-calorie-per-day eating regimen.").

[44] *See* Ex. I (MONDELEZ_SPECTOR00019027-19044) at 18 (████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

72.     Accordingly, Defendant's marketing of the Products is false, because the Products do not contain sufficient calories to guarantee the stated four hours of steady energy, and the Products' packaging conveyed to Spector, and would convey to a reasonable consumer, that eating a single serving of the Products alone would provide four hours of nutritious steady energy.[45]

73.     The Breakfast Biscuits, by themselves, also do not provide a "nutritious" balanced breakfast. A serving of the Products contains 10-13 grams of sugar which is equivalent to three teaspoons of sugar and the approximate sugar content in three Oreo cookies which have 14 grams of sugar. Likewise, each serving of the Breakfast Biscuits contains 8 grams of fat and only 3-4 grams of protein.

74.     According to the Mayo Clinic, a nutritious breakfast consists of one option from *each* of these groups: *whole grains*, such as whole-grain rolls, bagels, whole grain cereals, melba toast; *low fat protein*, such as peanut butter, lean meat, poultry or fish, eggs; *low-fat dairy*, such as skim milk, low-fat yogurt, low-fat cottage cheese and natural cheeses; and *fruits and vegetables*, such as fruit, vegetables, 100% juice beverages, fruit smoothies.[46]

75.     Defendant's internal documents demonstrate that the ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[47]



(emphasis added).

*See also supra,* ¶ 51

────────────────────────

*See* http://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/food-and-nutrition/art-20048294 (last accessed on May 12, 2016).
[47] *See* Ex. I (MONDELEZ_SPECTOR00019027-19044) at 7 ("▬▬▬▬▬▬▬▬▬▬▬▬

23

76.     Defendant's false, misleading and deceptive representations regarding the Products were material to reasonable consumers, including Plaintiff, because if they had known the truth about the Products they would not have purchased them, or would have purchased them at a lower price.

## CLASS DEFINITION AND ALLEGATIONS

77.     Plaintiff brings this action on behalf of herself and on behalf of the following classes of purchasers:

> (a) All persons who purchased belVita Breakfast Biscuits in the United States (the "National Class");
>
> (b) All persons who purchased belVita Breakfast Biscuits in Illinois (the "Illinois Class").

Excluded from the Classes are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; governmental entities; the judges to whom this case is assigned and any immediate family members thereof; and persons pursuing claims for personal injuries.  Plaintiff hereby reserves her right to amend the above class definitions based on discovery and the proofs at trial.

78.     This action has been brought and may properly be maintained on behalf of the Classes proposed above under the criteria of Federal Rule of Civil Procedure 23 ("Rule 23"), insofar as the Classes meet all the requirements of Rule 23.

79.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

---

██████████████████████████████); *see also supra* ¶ 50 quoting Defendant's internal document stating that ██████████████████████████████████████████████████████████████████████████ ." (Emphasis added).

80. **Numerosity:** The members of the Classes are so numerous that individual joinder of all members of the Classes is impracticable. Plaintiff is informed and believes that there are not less than thousands of purchasers of the Products in the State of Illinois, with far more in the entire United States. The precise number of members in the Classes is unknown to Plaintiff, but may be ascertained from Defendant's books and records and records of the Products' sellers and consumers. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet and mobile postings, and/or published notice.

81. **Existence and Predominance of Common Questions of Law and Fact:** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes. The common legal and factual questions include, among others:

    a. whether the statements made by Defendant as part of its advertising for the Products discussed herein are true, or are reasonably likely to deceive given the misrepresentations and omissions of material facts described above;

    b. whether Defendant's conduct as alleged herein constitutes an unfair method of competition or unfair or deceptive act or practice in violation of the ICFA;

    c. whether Defendant's conduct as alleged herein constitutes a breach of express warranty;

    d.   whether Plaintiff and the other members of the Classes who purchased the Products suffered monetary damages due to Defendant's breach of warranty, and the proper measure of that loss;

    e.   whether Defendant has been unjustly enriched by its conduct, and the extent to which it has been unjustly enriched; and

    f.   whether Plaintiff and the other members of the Classes are entitled to declaratory and/or injunctive relief.

82.    **Typicality:**  Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all members of the Classes purchased the Products after exposure to the same fundamental misrepresentations appearing on the package that a single serving of the Products alone provides "nutritious steady energy" for at least four hours.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Classes.

83.    **Adequacy of Representation:**  Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the other members of the Classes she seeks to represent; because she has retained counsel competent and experienced in complex class action litigation; and because Plaintiff intends to prosecute this action vigorously seeking the maximum possible recovery for the Classes.  Plaintiff and her counsel will fairly and adequately protect the interests of the Classes.

84.    **Superiority:**  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual members of the Classes is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against

Defendant.  It would thus be virtually impossible for the Classes, on an individual basis, to obtain effective redress for the wrongs done to them by Defendant.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding and presents no unusual management difficulties under the circumstances here.

85.    Unless a class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be deceived.

## NOTICE TO ATTORNEY GENERAL OF ACTION

86.    Pursuant to 815 ILCS 505/10a(d), a copy of the initial complaint in this action was mailed to the Attorney General simultaneously with the filing of the initial complaint.

## CAUSES OF ACTION

## COUNT I
**(Violations  of the Illinois Consumer Fraud and Deceptive Business Practices Act)**
**(On Behalf of the Illinois Class)**

87.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

88.    Plaintiff brings this claim individually and on behalf of the Illinois Class.

89.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased the Breakfast Biscuits in reliance on Defendant's claims detailed above, but did not receive a product containing the characteristics detailed above.

27

90.     At all times relevant hereto, there was in full force and effect the ICFA, 815 ILCS 505/1 *et seq.*

91.     The ICFA is a regulatory and remedial statute intended to protect consumers, including Plaintiff and the Class, against unfair or deceptive acts or practices. Specifically, Section 2 of the ICFA prohibits deceptive acts or practices, which are committed in the course of trade or commerce and with the intent that others rely upon them.  815 ILCS 505/2.

92.     Section 2 provides, in full:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.  In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

93.     Section 2 of the Uniform Deceptive Trade Practices Act states in relevant part that:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person ... represents that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have . . . .

815 ILCS 510/2(a)(5).

94.     Plaintiff and the Illinois Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

95.     The above-described unfair or deceptive acts or practices occurred in the course of conduct involving trade or commerce, namely, the sale of goods to Plaintiff and the Illinois Class.

96.     Defendant's practice of unlawfully engaging in the activity described above also constitutes "unfair" business acts or practices because, *inter alia*, Defendant engaged in false advertising, which misrepresents and omits material facts regarding the Products.  Defendant's business acts or practices therefore offend an established public policy, and Defendant engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, as alleged in detail *supra*, and therefore Defendant's actions are unfair or deceptive acts or practices prohibited by Chapter 2 of the ICFA.  *See* 815 ILCS 505/2.

97.     Defendant intended that Plaintiff and the Illinois Class rely on its deceptive acts or practices described *supra*.  Defendant's intent is evidenced by its actions, claims, nondisclosures, and misleading statements in marketing the Products as alleged in this Complaint that were false, misleading, and likely to deceive the consuming public.

98.     Plaintiff has in fact been deceived as a result of her reliance on Defendant's material representations and omissions, which are described above.

99.     Defendant's material misrepresentations and omissions described above have caused harm to Plaintiff and other members of the Illinois Class who each purchased

29

Defendant's Products. Plaintiff and the other Illinois Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

## COUNT II
### (Breach of Express Warranty)
### (On Behalf of the National Class or, in the alternative, the Illinois Class)

100. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

101. Plaintiff brings this claim individually and on behalf of the National Class.[48] Plaintiff, and each member of the National Class, formed a contract with Defendant at the time Plaintiff and the other members of the National Class purchased Defendant's Products. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging, as described above, that the Products, when eaten alone, would provide at least four hours of "nutritious steady energy" when in fact this was not the case. This product packaging constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the National Class on the one hand, and Defendant on the other.

102. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the National Class.

103. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the National Class by not providing the Products as described above. Such express warranties breached by Defendant include the representations set forth above.

---

[48] In the event that the Court declines to certify the Breach of Express Warranty claim on behalf of the National Class, Plaintiff asks that the Court, in the alternative, certify the claim on behalf of the Illinois Class.

104.    Defendant had actual knowledge of the breach of warranty claim alleged herein prior to the filing of this suit.  As set forth above, Defendant knew that the Products eaten alone do not provide four hours of nutritious steady energy.  In addition, there is nothing unique about the Plaintiff's warranty claim.  As noted above, Plaintiff, and all other consumers in the United States market, were uniformly exposed to the same false and deceptive representations about the Products on the packaging, and all received the same Product that could not perform, by itself, as warranted.

105.    As a result of Defendant's breach of contract, Plaintiff and the National Class have been damaged.

**COUNT III**
**(Unjust Enrichment)**
**(Alternative Claim to Count II for Breach of Warranty)**
**(On Behalf of the National Class or, in the alternative, the Illinois Class)**

106.    Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs 1 – 99 above as if fully set forth herein.  Plaintiff brings this claim individually and on behalf of the National Class.[49]

107.    Defendant was unjustly enriched by engaging in the following practices, *inter alia*, in transactions with Plaintiff and the National Class which were intended to result in, and did result in, the sale of the Products:

a.    Representing that the Products had characteristics, uses or benefits which they do not alone have;

b.    Representing that the Products are of a particular standard, quality, or grade, when they are of another;

---

[49] In the event that the Court declines to certify the Unjust Enrichment claim on behalf of the National Class, Plaintiff asks that the Court, in the alternative, certify the claim on behalf of the Illinois Class.

c.     Advertising the Products with intent not to sell them as advertised; and

d.     Representing that the Products have been supplied in accordance with a previous representation when they have not.

108.    Defendant was unjustly enriched after making the representations and advertisements about the Products, described above, because Defendant knew, or should have known, that the representations and advertisements were false, deceptive and misleading.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes proposed in this Complaint, prays for an order as follows:

A.     Certifying the Classes as requested herein;

B.     Appointing Plaintiff as Class representative and her undersigned counsel as Class counsel;

C.     Awarding Plaintiff and the proposed Class members damages;

D.     Awarding statutory damages to the extent available;

E.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

F.     Awarding injunctive relief as permitted by equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

G.    Ordering Defendant to engage in a corrective advertising campaign;

H.    Awarding attorneys' fees and costs; and

I.    Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 13, 2016

/s/ *Jayne A. Goldstein*
Jayne A. Goldstein
Perry Gattegno
**POMERANTZ LLP**
IL Bar No.: 6310724
10 South LaSalle Street, Ste. 3505
Chicago, IL 60603
Tel: (312) 377-1181
Fax: (312) 377-1184
jagoldstein@pomlaw.com
pgattegno@pomlaw.com

Janine L. Pollack
Michael Liskow
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
pollack@whafh.com
liskow@whafh.com

Theodore B. Bell
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
One South Dearborn Street
Suite 2122
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 212-4401
tbell@whafh.com

## <u>CERTIFICATE OF SERVICE</u>

I, Jayne A. Goldstein, hereby certify that on May 13, 2016, I caused a true and correct copy of the foregoing to be filed through the ECF system and therefore be electronically sent to the registered participants in this action.

s/ <u><em>Jayne A. Goldstein</em></u>
Jayne A. Goldstein

787045