# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUDY SPECTOR, on Behalf of Herself and All Others Similarly Situated, | Case No: 1:15-cv-4298 |
| | Judge Thomas M. Durkin |
| | Magistrate Judge Susan E. Cox |
| Plaintiff, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| MONDELĒZ INTERNATIONAL, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | **REDACTED PUBLIC VERSION** |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

**INTRODUCTION**

Plaintiff Judy Spector ("Plaintiff"), on behalf of herself and the class,[1] alleges claims against Defendant Mondelēz International, Inc. ("Defendant")[2] for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), as well as breach of express warranty and unjust enrichment. *See* Amended Class Action Complaint, ECF No. 57 ("FAC"). Plaintiff's claims stem from Defendant's continuing scheme of false and misleading packaging, labeling and advertising regarding its belVita Breakfast Biscuits (the "Products"), which Defendant falsely claims provide, in a single serving, four hours of "nutritious steady energy" when eaten alone (the "4-Hour Claim"). *See* ¶¶ 6, 24, 27-33.[3]

In support of her allegations Plaintiff has proffered three separate and independently sufficient reasons why the 4-Hour Claim is false. First, it is impossible to promise a consistent four hours of "nutritious steady energy" to the general public because of substantial variations in individuals' digestion, metabolism, and energy derived from the digestive process due to differences in, among other things, a person's size, gender, activity level and individual body chemistry, as Plaintiff's submitted studies and other materials demonstrate. *See* ¶¶ 35-47. Second, Defendant's own research shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* ¶¶ 48-62. Finally, as Plaintiff's submitted studies and other documents show, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *See* ¶¶ 63-75. In simple terms, Defendant promises four hours of energy from eating

---

[1] Plaintiff brings this action on behalf of two classes of purchasers: (1) all persons who purchased belVita Breakfast Biscuits in the United States; and (2) all persons who purchased belVita Breakfast Biscuits in the State of Illinois.

[2] Defendant cursorily notes that Plaintiff has "incorrectly" named it as a defendant because a separate entity, Mondelēz Global LLC ("Global"), "is the operating company for [Defendant] in the United States and the company that sold and distributed the products at issue." Defendant's Motion to Dismiss ("Motion" or "Mot.") at 1 n.1. Despite the fact that this case has been pending since May 14, 2015, and Defendant has served Fed. R. Civ. P. 26(a) initial disclosures and discovery responses as well as filed a prior motion to dismiss, it makes this argument now for the first time yet provides no reason why it is not *also* a proper defendant in the action with Global.

[3] ¶ refers to a paragraph of the FAC.

1

the Products alone and Plaintiff's studies and other proffered materials show that the Products alone cannot provide enough carbohydrates or calories to supply four hours of steady energy, and in any event, every person is different as to what energy he or she takes away from food. Plaintiff also clearly alleges that she did not receive the promised four hours of steady energy after consuming the Products. *See* ¶¶ 13, 20.

In response, Defendant argues in its Motion that Plaintiff has failed to allege falsity. However, Defendant's argument depends entirely on the Court accepting Defendant's own interpretation of the facts and documents provided by Plaintiff and giving inferences and making factual determinations in Defendant's favor. But at the pleading stage Plaintiff's plausible allegations, including its reasonable interpretations of any documents or studies at issue, must be taken as true, and Plaintiff's allegations are more than sufficient to state a claim for relief. *See, e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Defendant also argues that Plaintiff lacks standing to bring her ICFA claim because, although Defendant concedes Plaintiff alleges that she did not herself receive the 4-Hour Claim after consuming the Products, the allegation is "threadbare." *See* Mot. at 13-14. But Plaintiff's allegations are stated in more than enough detail to satisfy her obligations under Fed. R. Civ. P. 8(a) and 9(b). *See* ¶¶ 13, 20. For these reasons Defendant's Motion should be denied in its entirety.

## BACKGROUND

On March 31, 2016, the Court issued an Order dismissing Plaintiff's initial complaint with leave to amend. *See* ECF No. 46 (the "Order"). On May 2, 2016, the Court ordered Plaintiff to file with her FAC a brief explaining how the FAC cures the defects of the initial complaint identified by the Court. *See* ECF No. 56. On May 13, 2016, Plaintiff filed the requested brief and the FAC. *See* ECF Nos. 61, 62. Defendant then moved to dismiss the FAC on May 10, 2016. *See* ECF No. 68.

**ARGUMENT**

I. **PLAINTIFF HAS SUFFICIENTLY STATED EACH OF HER CLAIMS**

In ruling on a motion to dismiss for failure to state a claim, the Court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 762 (7th Cir. 2012) (internal quotation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (citation omitted). The complaint need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although Defendant briefly sets forth the pleading requirements under Fed. R. Civ. P. 8(a) and 9(b) in its Motion, *see* Mot. at 4, Defendant's argument is almost entirely based on the Court accepting *Defendant's* factual conclusions and interpretations of key studies and other documents at issue, which is impermissible on a motion to dismiss.[4] As stated in a case cited by Defendant, a "disagreement over interpretation of research . . . is a factual issue inappropriate for resolution on a motion to dismiss." *Toback v. GNC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 131135, at *12 n.2 (S.D. Fla. Sept. 13, 2013) (citations omitted). Because Plaintiff has met all applicable pleading standards, Defendant's motion to dismiss should be denied.

A. **The ICFA Claim is Adequately Pled**

As stated in the FAC, Defendant falsely advertises and markets single-serving portions of the Products on the package as providing a minimum of four hours of "nutritious steady energy"

---

[4] Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "'ordinarily requires describing the "who, what, when, where, and how" of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case.'" *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 755 (N.D. Ill. 2015) (quoting *AnchorBank*, 649 F.3d at 615). Here, Defendant focuses entirely on the "how," arguing that Plaintiff "still fails to plausibly allege facts showing that the energy claim is false." Mot. at 1.

when eaten alone for breakfast. *See* ¶¶ 6, 24, 27-33. If Plaintiff and the Class had been made aware that Defendant's 4-Hour Claim was false they would not have purchased the Products, or would have purchased them at a lower price. *See* ¶ 21. Defendant does not argue that it did not have a duty to disclose the truth about the 4-Hour Claim but instead argues solely that Plaintiff has failed to sufficiently allege falsity. However, Plaintiff has sufficiently alleged three independent reasons why Defendant's 4-Hour Claim is false.

The ICFA is "a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *LSREF3 Sapphire Trust 2014 v. Barkston Props., LLC*, 2016 U.S. Dist. LEXIS 7931, at *19 (N.D. Ill. Jan. 25, 2016) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008)) (internal quotations omitted). To state an ICFA claim, a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Muir v. Playtex Products, LLC*, 983 F. Supp. 2d 980, 987 (N.D. Ill. 2013) (internal citations omitted). Claims for fraud under the ICFA "must satisfy the particularity requirement of Rule 9(b)." *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).[5] Defendant's only challenge to the adequacy of Plaintiff's ICFA claim concerns whether Plaintiff pleads sufficient facts to show that the Products do not provide the promised 4-Hour Claim, *i.e.*, whether Plaintiff has pled a "deceptive act or practice." But as demonstrated below, Plaintiff's FAC pleads extensive facts to support her allegations of actual falsity of Defendant's 4-Hour Claim.[6]

---

[5] Plaintiff has not alleged a lack of substantiation claim, and Defendant no longer contends that Plaintiff does. *Compare* ECF No. 17 at 3, 10-11, *with* Motion at 5 n.3.

[6] Defendant makes no challenge to Plaintiff's breach of warranty and unjust enrichment claims except to say that "dismissal of Plaintiff's ICFA claim here will also require dismissal of her breach of warranty and unjust enrichment claims since all three claims are predicated on the same factual allegations of false advertising." Mot. at 4 n.2 (citing Order at 26-27). But Plaintiff reiterates that there is no basis to automatically dismiss a breach of express warranty claim or an unjust enrichment claim solely because a

Plaintiff provides the following three separate and independently sufficient reasons for why the 4-Hour Claim is false. The bulk of Defendant's Motion consists of attempts to provide alternative interpretations of the allegations using Defendant's cherry-picked facts. But this is impermissible on a motion to dismiss, and Defendant fails to undermine Plaintiff's allegations.

### 1. Plaintiff's Studies Showing Individual Variation in Digestion and Metabolism Are Relevant to, and Show the Falsity of, Defendant's 4-Hour Claim

Plaintiff has alleged, with citation to studies and Defendant's internal documents, that Defendant's 4-Hour Claim made to the general public is false because, *inter alia*, variations in individuals' digestion, metabolism, and energy derived from the digestive process, and consequent variation in the duration and quantity of energy they receive from the Products, make any general claim of the 4-Hour Claim to the population at large impossible. *See* ¶¶ 35-47. Defendant retorts that the studies Plaintiff cites are irrelevant because they do not discuss the actual Products or the impact of slowly digestible starch ("SDS") on glycemic response, slower digestion and sustained energy, leaving a disconnect between the studies and the claimed misrepresentations. *See* Mot. at 6. But these arguments are erroneous because the studies and internal documents Plaintiff cites directly relate to, and will be used by Plaintiff to prove the falsity of, Defendant's 4-Hour Claim. Plaintiff's citation to these materials is thus sufficient at the pleading stage to show the falsity of Defendant's statements.

First, contrary to Defendant's argument, any studies relied upon by Plaintiff do not need to have been performed on the actual Products as long as the studies show the falsity of the representations at issue. Here Plaintiff alleges that an individual's energy duration, the concept at issue in the case, involves numerous variable factors including metabolism, digestion, carbohydrates consumed and caloric intake, and explains how these factors are connected to energy. *See* ¶¶ 35-37, 43-47. Thus, studies regarding these factors are relevant to the 4-Hour Claim and the studies do not need to have been performed on the Product itself.

companion fraud or consumer fraud count is dismissed in an action, especially where both tort and contract theories have been pled. *See* ECF No. 29 at 6 n.6.

Second, Defendant improperly attempts to narrow the potential studies that could be germane to proving the falsity of the 4-Hour Claim by contending that the only relevant factor is "the impact of [SDS] . . . on glycemic response, slower digestion, and ultimately sustained energy." Mot. at 6. But as explained in the Complaint, the 4-Hour Claim necessarily takes into account *more* than just SDS, including the factors discussed above. ███████████████ ███████████,[7] ██████████████████████████. *See, e.g.,* Mot. at 7 (Defendant's "██████████████████████████"), *id.* at 13 (████████████ ██████████████████████") (emphasis added).

As explained above and in the Complaint, every individual has a unique response in digesting and metabolizing food, and an individual's energy response is unique and dependent upon age, size, gender, activity level and body composition. *See* ¶ 35. A person's energy level in response to eating food is also affected by what else is ingested with that food. *See id.* These factors are thus relevant to a claim of four hours of steady energy and studies regarding these factors are similarly relevant. Defendant's attempt to frame the controversy as limited solely to "SDS" is thus erroneous.

As stated by Defendant itself:

> Starch is a naturally occurring dietary carbohydrate. . . . It occurs naturally in a granular form with a semi-crystalline structure, which may be transformed into Rapidly Digestible Starch (RDS) upon exposure to heat, pressure and/or moisture during food processing. Slowly digestible starch (SDS) takes longer to breakdown by digestive enzymes compared to RDS because it is higher in this semi-crystalline structure and therefore less accessible to the action of enzymes. This results in a moderate and steady release of glucose in the blood. Foods with high SDS content elicit lower post-meal blood glucose and insulin responses as compared to foods with low SDS content.[8]

Thus, SDS is a carbohydrate that takes longer to digest. SDS is also a type of carbohydrate that, like all others, influences one's postprandial glycemic response ("PPGR") when consumed.

---

[7] *See* FAC, Exs. A-D.
[8] http://www.slowreleasecarbs.com/faqs/ (internal citations omitted). This website is designed to appear to provide independent information on SDS but in fact is registered to Defendant. *See* https://domlab.net/slowreleasecarbs.com?utm_source=wsdn.info&utm_medium=redirect&utm_campaign =permanent.

6

PPGR is the body's glucose (or "blood sugar") response after consuming food. *See* ¶ 37. Plaintiff's cited studies review and discuss PPGR. *See, e.g.*, ¶¶ 37, 42 (citing research performed concerning factors such as genetics, lifestyle, insulin sensitivity, exocrine pancreatic and glucose transporters activity levels, and gut microbiota demonstrating "high interpersonal variability in PPGRs to the same food"). Plaintiff also alleges, *inter alia*, that individual glycemic responses to food differ from person to person, day to day, and/or by pairings of foods and beverages. *See* ¶¶ 35-41. She alleges that a study of 800 consumers demonstrated highly variable PPGRs when these individuals consumed the exact same meals. *See* ¶ 36 (the National Institute of Health ("NIH") concluded that "universal dietary recommendations may have limited utility."). The study's results showed high interpersonal variability in PPGR's to the same food, which shows that any promise to the consuming public of four hours of steady energy is false. *See* ¶ 42. These studies are clearly relevant to the 4-Hour Claim because these highly variable responses to food affect the "energy" each person receives from that food – the central claim at issue in this case. Therefore, Defendant's claimed "disconnect" is a red herring.[9]

Although Defendant claims that Plaintiff's cited studies are improperly "focus[ed] on proper glycemic control" instead of SDS, Mot. at 6, this is a merits argument for the parties' experts at summary judgment. Defendant fails to acknowledge that ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Mot. at 8 n.7.[10] That is precisely the so-called benefit of SDS – it "results in a moderate and steady release

---

[9] Under the Rule 9(b) standard "the plaintiff is not required to plead facts conclusively establishing that the alleged misrepresentation is false, but instead must state some specific act, series of acts, or omission by the defendant from which the court could plainly infer fraudulent conduct." *Gold v. Golden G.T., LLC*, 2005 U.S. Dist. LEXIS 22691, at *19 (N.D. Ill. Oct. 4, 2005) (citing *Bankers Trust Co. v. Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1993)) (internal quotations omitted). Here Plaintiff has demonstrated the link between the studies and the misrepresentations.

[10] *See* ECF No. 17-1, Ex. 1 at 1 ("low GI meals have been shown to improve acute postprandial glucose tolerance . . . [b]ut, evidence is missing as to conclude that the acute reduction in blood glucose response elicited by low GI foods may persist in the long term"); *Id.*, Ex. 2 at 2 ("postprandial glucose response may indicate a slow appearance of ingested carbohydrates . . .").

of glucose in the blood."[11] Thus, any "focus" by Plaintiff on glycemic control (*i.e.,* glucose release) is appropriate here, as demonstrated by Defendant's own studies.[12]

Finally, Defendant's criticism that Plaintiff's cited studies merely "make a general point that individuals' post-meal glycemic responses can vary based on size, weight, nationality, gender…," Mot. at 7, is in fact the *precise reason* that these studies are highly relevant to Defendant's 4-Hour Claim. Defendant markets the Products as alone providing the 4-Hour Claim to the entire population, and these studies clearly demonstrate that such claim is false because individuals have varied responses to all foods including the Products.[13]

Defendant relies on *Padilla v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 7990 (N.D. Ill. Jan. 16, 2013), because there the plaintiff "failed to draw a connection between the clinical studies he cited and the actual representations appearing on the product label." Mot. at 6. But in *Padilla* the plaintiff relied on osteoarthritis studies even though the product label did not claim to be effective to treat osteoarthritis, so there was no "connection between the clinical studies that he cites and the actual representations appearing on the . . . product label . . ." *Id*. at *9. By contrast, Defendant claims that the Products alone provide the 4-Hour Claim to *all* consumers at *all* times. Therefore, Plaintiff's studies are directly relevant to this claim and make

---

[11] *See* http://www.slowreleasecarbs.com/faqs/.
[12] Defendant argues that the opinion issued by the European Food Safety Authority (the "EFSA Opinion") validates its 4-Hour Claim. *See* Mot. at 8 n.6 (EFSA Opinion available at http://www.efsa.europa.eu/sites/default/files/scientific_output/files/main_documents/2292.pdf). First, the claim language approved by the EFSA Opinion says nothing whatsoever about energy, duration of energy or the Products: "Consumption of cereal products high in slowly digestible starch raises blood glucose concentrations less after a meal than cereal products low in slowly digestible starch." *Id.* at 12. Moreover, the EFSA Opinion explicitly states that it cannot be used as the basis for advertising like the 4-Hour Claim. *See id.* at 7 ("The present opinion does not constitute, and cannot be construed as, an authorisation to the marketing of 'slowly digestible starch in starch-containing foods.'"). It is likely for this reason that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See* Exhibit A (MONDELEZ_SPECTOR00000052) at 2.
[13] Defendant's argument that Plaintiff "does not allege that her own digestive and metabolic responses to the consumption of food vary in any way from the general population," Mot. at 9, ignores the entire point: the general population, including Plaintiff, has different responses to the consumption of food.

the necessary connection because they show that individual differences make the population-wide 4-Hour Claim impossible. *See* ¶¶ 35-47; *see also Padilla*, 2013 U.S. Dist. LEXIS 7990, at *8 (an ICFA claim can rely upon clinical studies with a connection between the findings of the studies and the representations on a product label).[14]

Plaintiff also supports her allegations that the Products are ineffective, and thus that Defendant's 4-Hour Claim is false and misleading, by alleging that she saw the claim on Defendant's packaging, bought and consumed the Products to obtain the claimed benefit, and did not experience four hours of steady energy after she consumed them alone. *See* ¶¶ 19-21; *cf. Swires v. Incredible Scents, Inc.*, 2013 U.S. Dist. LEXIS 136294, at *19 (S.D. Ill. Sept. 24, 2013) ("Swires' claim of Silent Snooz's ineffectiveness is supported by his own experience that it did not help him reduce his snoring."). This is sufficient to plead an ICFA claim under the liberal federal pleading standards, and even under Rule 9(b)'s heightened requirements. *See Swires*, 2013 U.S. Dist. LEXIS 136294, at *19.

### 2. Defendant's Own Research Shows that the Products Alone Could Not Support the 4-Hour Claim

Defendant next attempts to dispute and contradict the clear result of its own research and other internal documents showing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* ¶¶ 48-62. Most importantly, Defendant quarrels with the meaning of its own key document ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[14] Defendant argues that *Eckler v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 157132 (S.D. Cal. Nov. 1, 2012), causes Plaintiff's claim to fail for the same reasons as *Padilla* does. *See* Mot. at 6-7. But *Eckler* is both factually and legally distinguishable and should not guide the Court's ruling. The product at issue in *Eckler* contained a prominent disclaimer on its label stating that it could not treat or cure any disease, including osteoarthritis, *see id.* at *28, whereas the Products here contain no such disclaimer and make the clear 4-Hour Claim. *Eckler* is also non-binding authority interpreting a California state law distinct from the ICFA. Defendant also relies on *Eckler* largely for its statement that there is a "disconnect between the representations at issue and what the studies cited by Eckler actually show." *Id.* at *33 n.10. But the full text shows that this was not the Court's actual holding, merely a "concern," and moreover one that the Court was unsure should even be addressed at the motion to dismiss stage. *See id.* ("It *certainly bothers* the Court here that there is a disconnect between the representations at issue and what the studies cited by Eckler actually show. Moreover, it's *not necessarily* a merits issue that the Court should pass on.") (emphasis added). Defendant's other cited cases for this point, *see* Mot. at 7 n.5, are also distinguishable because, here, Plaintiff has connected the cited studies and materials to the false 4-Hour Claim.

9

▓▓▓▓▓▓▓▓▓▓),[15] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓,"[16] ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Defendant does not argue that the ▓▓▓▓▓▓ is incorrect, but instead claims that Plaintiff has "misread[] the document" while offering its own implausible explanation of the document's clear language. Mot. at 9-13. But at the pleading stage Plaintiff's allegations and plausible interpretations of the facts at issue are deemed to be true. *See Toback*, 2013 U.S. Dist. LEXIS 131135, at *12 n.2 (disagreement over interpretation of research is factual issue inappropriate for resolution on motion to dismiss). Plaintiff's reading of the ▓▓▓▓▓▓ is more than plausible, and Defendant must wait until it is before the factfinder to argue its own interpretation.

Defendant argues that the document, when read as Defendant suggests, ▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓" Mot. at 10. But Plaintiff's reading of the ▓▓▓▓▓▓ is plausible because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and Defendant's interpretation is contrary to the plain language of the document.[17]

---

[15] For the convenience of the Court the ▓▓▓▓▓▓ is again attached hereto as Exhibit B.

[16] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Defendant's claim that "Plaintiff incorrectly argues that the total amount of carbs would be the determining factor as to the substantiation of the claim, when in fact the presence and effect of slowly digestible starch is the basis for the claim," Mot. at 10, is groundless because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. To the extent that Defendant has a contrary explanation for the clear language of the document, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓," such

Defendant's argument that the ▬▬▬ proves the 4-Hour Claim is erroneous because ▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬

▬▬▬.

A close analysis of the ▬▬▬ confirms this is a far more plausible interpretation ▬▬▬ than that offered by Defendant. For example:

- ▬▬▬

explanation must wait until after the pleading stage. Moreover, ▬▬▬

▬▬▬.

11



- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Defendant attempts to wave away numerous other internal documents cited by Plaintiff for this point by simply saying that the statements are "irrelevant" and "raise absolutely no suggestion of falsity" without making *any attempt* to demonstrate why this might be so. Mot. at 11 n.8 (citing ¶¶ 50, 55-57, 62; FAC, Exs. F and H). This is utterly insufficient to support a motion to dismiss, and these uncontroverted documents greatly bolster Plaintiff's claims. Particularly illustrative is Defendant's own statement that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮." ¶ 50; FAC, Ex. F. This completely contradicts Defendant's promise that a single serving of the Products provides four hours of nutritious steady energy for breakfast, and is further shown to be false by Plaintiff's allegations that the 230 calories provided by the Products alone are insufficient to fuel an individual for four hours in the morning, whether "steadily" or not. *See infra* Section I.A.3.[20] In the end, Defendant's improper attempt to provide alternative,

---

[18] Defendant's sole argument against this point is nonsensical. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Other documents produced by Defendant support Plaintiff's plausible reading of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Defendant's citation to *Greifenstein v. Estée Lauder Corp.*, 2013 U.S. Dist. LEXIS 104659 (N.D. Ill. July 26, 2013), is inapposite because there the plaintiff rested her claim of falsity on a single report by the National Advertising Division which did not even address each of the plaintiff's claims, and then the

implausible explanations for its internal documents cited by Plaintiff fails to rebut Plaintiff's allegations and should be rejected on a motion to dismiss.

### 3. The 230 Calories in a Single Serving of the Products Are Insufficient to Guarantee Four Hours of Nutritious Steady Energy

Defendant attempts to brush off Plaintiff's allegations concerning an individual's daily calorie requirement, and ignores that calories are a unit of energy in food directly related to the 4-Hour Claim. *See* Mot. at 13. Defendant's own internal documents show ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Moreover, Plaintiff cites, *inter alia*, (1) NIH guidelines requiring consumption of 2,000 to 3,000 calories every day; (2) recommendations to consume a third of those calories at breakfast; and (3) NIH materials stating that calories are defined as a unit of energy in food. *See* ¶¶ 63, 65, 67. The 230 calories contained in each pack of the Products are simply not enough to provide four hours of steady energy, *see* ¶¶ 63-76, as Defendant's internal documents concede. *See* FAC, Ex. I at 9, 12.

Relying again on *Padilla*, Defendant merely argues that Plaintiff's "general facts" regarding minimum caloric requirements are "not specific factual allegations" and are irrelevant to the 4-Hour Claim, and that any "suggestions" by Defendant that the Products be eaten as part of a breakfast are from a "desire" to promote "well-rounded nutrition." Mot. at 13. But as shown by the various studies and documents Plaintiff provides in her FAC, calories *are* energy when evaluating food and are thus directly connected to the 4-Hour Claim. Because Rule 9(b) does not require Plaintiff to plead facts conclusively establishing that the alleged misrepresentation is false, *see Gold*, 2005 U.S. Dist. LEXIS 22691, at *19, her allegations that

---

report was later almost entirely overturned on appeal, with the only surviving conclusion of falsity in the report at variance with the plaintiff's claims. *See id.* at *15-22. By contrast, here Plaintiff alleges numerous studies and bases for the Products' falsity.

the Products cannot and did not provide the 4-Hour Claim are sufficient to support an ICFA cause of action. *See Swires*, 2013 U.S. Dist. LEXIS 136294, at *19.

II. **PLAINTIFF HAS STANDING TO BRING HER CLAIM UNDER THE ICFA BECAUSE SHE ALLEGES SHE DID NOT RECEIVE THE PROMISED FOUR HOURS OF NUTRITIOUS STEADY ENERGY, AS DEFENDANT ADMITS**

Defendant admits, as it must, that Plaintiff did allege in the FAC that she did not receive the 4-Hour Claim from consuming the Products. *See* ¶¶ 13, 20 ("Plaintiff Spector consumed the Breakfast Biscuits either by themselves, with water, or with coffee, and after consuming the Breakfast Biscuits did not obtain the promised four hours of nutritious steady energy."). Faced with these clear allegations, Defendant attempts to inflate Plaintiff's pleading requirement by arguing that her allegations lack "factual support" and are "threadbare." Mot. at 14. But Plaintiff's allegations, which are supported by studies and Defendant's own documents, must be taken as true and are more than sufficient at this stage. In fact, these allegations are precisely what the Court ordered was necessary for Plaintiff to have standing. *See* Order at 26 (Plaintiff "provided no factual basis for inferring she was injured by Defendant's alleged deceptive advertising by not experiencing the four hours of 'nutritious steady energy' promised on the Product's packaging.").[21] Courts have held such pleading sufficient at this stage of the case. *See, e.g., Swires,* 2013 U.S. Dist. LEXIS 136294, at *19.

Defendant's citation to *Eckler* to support its standing argument rests on a misleading portrayal of that case. *See* Mot. at 14. In *Eckler*, the court dismissed the case in part because the

---

[21] Defendant falsely claims that Plaintiff "repeatedly sa[id] in her original complaint that she did not know if she obtained steady energy after eating the belVita products." Mot. at 14. Plaintiff never alleged anything of the sort in her initial complaint. Instead Plaintiff stated: "Plaintiff does not through this Complaint or otherwise concede that Defendant's claims regarding the Products, including that they can provide nutritious steady energy for four hours all morning, are true. Nowhere in the United States does Defendant provide access or reference to any study, peer-reviewed or otherwise, which supports its claim regarding steady energy for four hours all morning. Plaintiff reserves the right to amend her complaint once Defendant provides her with any such study." ECF No. 1, ¶ 3 n.1. This is no way represents an allegation of Plaintiff's experience after consuming the Products, much less a statement that Plaintiff "did not know if she obtained steady energy after eating the" Products. Mot. at 14. To the contrary, consistent with her claims asserted in the original complaint, Plaintiff stated that she did not concede anything regarding Defendant's statements regarding whether the Products could actually provide the 4-Hour Claim because Plaintiff's omission claim in her original complaint did not require such pleadings. *See* ECF No. 29 at 6 n.5.

14

plaintiff's claims that the product she purchased did not "rebuild . . . cartilage, lubricate . . . joints or improve . . . joint comfort as represented" were largely based on her *own* claim that she did not personally receive such benefits. *Id.*, 2012 U.S. Dist. LEXIS 157132, at *7-8 n.2. Accordingly, in granting the plaintiff leave to amend her complaint the court warned the plaintiff that "*to the extent* Eckler's false advertising claims *turns on her own experience* with Equate, **rather than** studies that show it doesn't deliver the joint benefits it suggests, she needs to say far more than, in essence, 'I took Equate and didn't feel any better.'" *Id.* at *32 (emphasis added). Defendant omits the majority of this sentence which makes clear the plaintiff's allegation of not personally receiving the claimed benefit, *pled alone* and without evidence that others did not or would not receive the benefit, is insufficient to show the claim was false in general. Here, by contrast, Plaintiff pleads extensive allegations beyond her own experience, including studies and Defendant's own internal documents, demonstrating the falsity of the 4-Hour Claim.

## CONCLUSION

For the reasons set forth herein Defendant's Motion to Dismiss should be denied in its entirety.[22] Plaintiff further requests oral argument on this matter.

Dated: July 1, 2016

/s/ Theodore B. Bell
Theodore B. Bell
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLC**
IL Bar No.: 6273743
One South Dearborn Street
Suite 2122
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 212-4401
tbell@whafh.com

---

[22] Defendant again argues that this Court should dismiss the FAC with prejudice, *see* Mot. at 14-15, but again solely cites to the inapposite *Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907, 927 (N.D. Ill. 2005), where the court dismissed with prejudice the plaintiff's *fourth* version of the complaint. If the Court determines that all or part of the FAC should be dismissed, Plaintiff seeks leave to amend her FAC to address any deficiencies. *See Kirsch v. Brightstar Corp.*, No. 12 C 6966, 2014 U.S. Dist. LEXIS 146641, at *13 (N.D. Ill. Oct. 10, 2014) ("leave to amend should be freely granted unless there is . . . '*repeated* failure to cure deficiencies by amendments previously allowed . . .'") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added).

15

Janine L. Pollack
Michael Liskow
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
pollack@whafh.com
liskow@whafh.com

Jayne A. Goldstein
Perry Gattegno
**POMERANTZ LLP**
IL Bar No.:  6310724
10 South LaSalle Street, Ste. 3505
Chicago, IL 60603
Tel: (312) 377-1181
Fax: (312) 377-1184
jagoldstein@pomlaw.com
pgattegno@pomlaw.com

## **CERTIFICATE OF SERVICE**

I, Theodore B. Bell, hereby certify that a true copy of the foregoing filed through the ECF system will be electronically sent to the registered participants in this action.

Dated: July 1, 2016

> /s/ *Theodore B. Bell*
> Theodore B. Bell

787596