# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JUDY SPECTOR, on Behalf of Herself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 15 C 4298 |
| vs. | ) ) | Judge Thomas M. Durkin |
| MONDELĒZ INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

The Court previously dismissed the original complaint in this matter, Familiarity with that ruling is presumed. Plaintiff filed an amended complaint (R. 57), and then Defendant[1] filed a second motion to dismiss. The Court now grants Defendant's second motion and dismisses the amended complaint. This time dismissal will be with prejudice.

### DISCUSSION

### A.    PLEADING STANDARD FOR FALSE ADVERTISING CASES

At issue in this case is Defendant's representation on the packages of its products belVita Breakfast Biscuits and belVita Breakfast Bites (hereinafter "the

---

[1] Defendant asserts it is a global holding company and that Plaintiff should have sued its subsidiary Mondelēz Global LLC instead because Mondelēz Global is the entity that sold and distributed the products at issue. *See* R. 69 at 2 n.1. Should Defendant deem it necessary following entry of the current opinion to file a motion or agreed order to substitute, it may do so. For present purposes, the Court's references herein to "Defendant" are intended to be to whichever entity is the proper defendant in this case.

Products") that they provide "4 hours of nutritious steady energy." In dismissing Plaintiff's original complaint, this Court found, among other things, that Plaintiff had failed to plausibly allege specific facts showing that Defendant's 4 hour energy representation is false. *See Spector v Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657 (N.D. Ill. 2016). In the amended complaint, Plaintiff again alleges falsity but this time pleads different facts to show that the Products do not provide the promised 4 hours of steady energy. The question before the Court is whether these new facts are adequate to support a plausible false advertising claim.[2]

To adequately plead that the 4 hour energy representation is false, Plaintiff may not rely on the mere allegation of falsity, which is conclusory and thus not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Factual allegations to support that conclusory allegation are required. But it is not enough if those supportive factual allegations suggest "the mere possibility" of falsity. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Otherwise, "a plaintiff with a largely groundless claim [would] be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* at 558 (internal quotation marks and citation omitted). Instead, Plaintiff's factual allegations that purportedly support her claim of falsity must rise to the level of being plausible. The Court construes the alleged facts in

---

[2] Plaintiff's false advertising allegation forms the basis of all three counts in the amended complaint, which include (1) Count I for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; (2) Count II, for breach of express warranty; and (3) Count III, for unjust enrichment.

favor of Plaintiff, but the plausibility requirement means that those facts, construed in Plaintiff's favor, must allow the Court to draw a *reasonable*, as opposed to a *speculative*, inference that Defendant's 4 hour energy claim is false. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Indeed, the burden is even higher than plausibility because Plaintiff seeks to hold Defendant liable under the ICFA, and Rule 9(b) applies to that claim. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Rule 9(b) requires more than the "who, what, where, when, and how" concerning the alleged fraud; it also requires that the alleged facts show that fraud is "necessary or probable inference" from those facts. *Spector*, 2016 WL 1270493, at *9 (quoting *People ex rel. Hartigan v. E. & E. Hauling, Inc.,* 607 N.E.2d 165, 174 (Ill. 1992) ("a complaint must plead sufficient acts or facts relied upon to establish the fraud, and fraud must be a necessary or probable inference from the facts alleged") (internal quotation marks and citation omitted))).[3]

---

[3] Plaintiff attempts to avoid these pleading standards by arguing that, "[u]nder the Rule 9(b) standard 'the plaintiff is not required to plead facts conclusively establishing that the alleged misrepresentation is false, but instead must state some specific act, series of acts, or omission by the defendant from which the court could plainly infer fraudulent conduct.'" R. 75 at 8 n.9 (quoting *Gold v. Golden G.T., LLC*, 2005 WL 2465815, at *6 (N.D. Ill. Oct. 4, 2005)). In the first place, the case Plaintiff cites, *Gold,* does not address the plausibility component of a well pled fraud claim because it was decided before *Twombly* and *Iqbal.* Moreover, nothing in this opinion requires Plaintiff to allege facts "conclusively establishing" fraud. Instead, the Court is merely applying the *Iqbal/Twombley* plausibility standard and Rule 9(b).

## B.    PLEADING ACTUAL FALSITY VERSUS LACK OF SUBSTANTIATION

In its first opinion, the Court noted that there were two types of false advertising claims: actual falsity and lack of substantiation. *Spector*, 178 F. Supp. 3d at 666. To prove a claim in the first category, a plaintiff must establish that the advertisement is actually false or misleading. To prove a claim in the second category, a plaintiff has a significantly lower burden: she need only show that the advertisement lacks scientific or other support. *Id.*

The distinction between actual falsity and lack of substantiation may seem somewhat artificial; "[i]n common usage, we might say that both [types of claims] are 'unsubstantiated.'" *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012). Nevertheless, many state consumer fraud statutes do not allow for private rights of action with respect to lack of substantiation claims, holding that such challenges are left to the Attorney General and other prosecuting authorities. *See, e.g., Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013). In Illinois, a plaintiff may bring a lack of substantiation claim, but *only* "when the [advertising] claim at issue implies there is substantiation for that claim, *i.e.,* if defendants had claimed something along the lines of 'tests show that [the product in question] is [ ] effective.'" *Gredell v. Wyeth Labs., Inc.*, 854 N.E.2d 752, 756 (Ill. App. 2006) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n. 2 (7th Cir. 2001) ("lack of substantiation is deceptive only when the comparative claim at issue implies that there is substantiation for the claim made")). The 4 hours of nutritious steady energy claim at issue here does not

imply there is substantiation for it (although Defendant says there is). Therefore, to succeed on her false advertising claim, Plaintiff must plead and prove that Defendant's 4 hour energy claim is actually false. *Id.*

The distinction between pleading a false advertising claim based on actual falsity and pleading a false advertising claim based on lack of substantiation is at the crux of this case for reasons that become apparent upon consideration of the court's opinion in *Kwan v. SanMedica International, LLC*, 2015 WL 848868 (N.D. Cal. Feb. 25, 2015). *Kwan* involved an over-the-counter supplement marketed to boost human growth hormone ("HGH"). The defendant advertised that increased HGH was associated with wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, and heightened sex drive, among other things. *Id.* at *1. The district court held that the plaintiff had alleged no more than a lack of substantiation claim, and then "granted [the] [p]laintiff leave to amend, but only if she could allege facts from which the [c]ourt could conclude that [the] [d]efendant's advertising representations were false. The [c]ourt warned [the] [p]laintiff that it would not be enough to attack the methodology of [the] [d]efendant's study; instead, she must allege facts *affirmatively disproving* [the] [d]efendant's claims." *Id.* at *2 (emphasis added) (internal quotation marks and citations omitted); *see also id.* at *4 ("an advertising claim is false if it has 'actually been disproved,' that is, if the plaintiff can point to evidence that directly conflicts with the claim") (quoting *Eckler,* 2012 WL 5382218, at *3). The court identified three ways the plaintiff could meet that burden:

> Plaintiff could allege that one or more of the authorities alluded to actually studied or tested the formula SeroVital contains and found that it does not produce a 682% mean increase in HGH levels, or that Plaintiff herself did not experience such an increase when using the product, or that a study exists somewhere demonstrating that a 682% increase is categorically impossible to achieve in an over-the-counter pill.

*Id.* at *2.

The plaintiff re-pled her claim, and the court once again granted the defendant's motion to dismiss because the plaintiff "cites no study that disproves [the] [d]efendant's [advertising] claims," and "still does not allege that a study exists showing [the advertised] benefits [of the defendant's supplement] are categorically impossible to achieve." *Id.* at *6. The court rejected the plaintiff's reliance on regulatory warnings and cautionary statements in the academic literature to the effect that no reliable evidence supported the conclusion that non-prescription products had the same effect as prescription HGH. While the court found these statements "may be relevant to [the] [p]laintiff's claims," it concluded that "they failed to demonstrate that [the] [d]efendant's advertising claims are false." *Id.* at *5. Instead, they showed only that the defendant's advertising claim may not be substantiated. And the court said that the plaintiff could not "make an end run around the bar against private substantiation claims" by pleading only lack of substantiation as opposed to "affirmative evidence" of falsity. *Id.* at *5-6

The district court's decision in *Kwan* was affirmed by the Ninth Circuit, which agreed that the plaintiff's amended complaint failed to "allege facts to support a finding that [the] defendant's advertising claims were actually false."

*Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1098 (9th Cir. 2017). "Since California law does not provide a private cause of action for claims that advertising lacks substantiation, the failure to allege specific facts pointing to actual falsehood constitutes a fatal flaw," according to the court. *Id.* at 1096-97. Allowing the plaintiff to proceed on her false advertising claim without the pleading of factual allegations directly supporting her claim of falsity would improperly shift the burden of proof from the plaintiff to the defendant. *Id.* at 1097. This, in turn, would be contrary to the legislative judgment that private plaintiffs should not be permitted to bring lack of substantiation claims. *Id.* (citing *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,* 133 Cal. Rptr. 2d 207, 213 (Cal. App. 2003) (if "a private plaintiff may simply allege that an advertising claim is false or misleading and thereby require the defendant to produce evidence that the claim is true," the intent of the Legislature would be "thwart[ed]")).[4]

While Illinois law is not as restrictive as California law, it too places limits on a plaintiff's right to bring a lack of substantiation claim. Thus, similar to the Ninth Circuit's conclusions in *Kwan*, allowing Plaintiff to plead a false advertising claim without pleading facts that, if true, directly contradict Defendant's 4 hour energy

---

[4] In California, the state legislature permits "prosecuting authorities, but not private plaintiffs, to require substantiation of advertising claims." *King Bio Pharm., Inc.,* 133 Cal. Rptr. 2d at 214. The *King Bio* court found that this "distinction is certainly rational" because it "prevents undue harassment of advertisers and is the least burdensome method of obtaining substantiation for advertising claims." *Id.* In addition, a prosecuting authority "is directed to 'tak[e] due care to protect legitimate trade secrets'" in disseminating information to consumers concerning unsubstantiated advertising claims, whereas "[n]o such restriction would be applicable to private plaintiffs prosecuting false advertising actions were [the court] to shift the burden of production to defendants." *Id.* (citation omitted).

representation, would thwart the rule in Illinois that a plaintiff may bring a lack of substantiation claim only if the defendant makes a substantiation claim in its advertisement. Plaintiff asserts that she "has not alleged a lack of substantiation claim, and that "defendant no longer contends that [she] does." R. 75 at 5 n. 5. The question, however, is not whether Plaintiff labels her claim as a claim based on actual falsity as opposed to lack of substantiation, but whether she has "sufficiently allege[d] false misrepresentation in . . . [a] way[ ] that do[es] not implicate a mere lack of substantiation." *Kwan*, 854 F.3d at 1096. If Plaintiff asserts that Defendant's advertising is false but alleges specific facts that do not actually disprove the advertising claim, then the result is an end-run around the Illinois rule prohibiting her from shifting the burden to Defendant of proving the truthfulness of its advertisement in a situation where Plaintiff does not have standing to bring a lack of substantiation claim.

Having established why Plaintiff is required to allege facts directly contradicting Defendant's 4 hour representation claim, the Court will next examine whether Plaintiff has done so.

### C. PLAINTIFF HAS NOT ALLEGED THE EXISTENCE OF ANY TESTING OR STUDIES REGARDING THE PRODUCTS DIRECTLY CONTRADICTING DEFENDANT'S 4 HOUR ENERGY CLAIM

In virtually all of the cases in which courts have held that the plaintiff adequately pled actual falsity in a false advertising case, the complaints in question cited to testing or studies that directly contradicted the advertising claim at issue. For instance, in *Quinn v. Walgreen Co.,* 958 F. Supp. 2d 533 (S.D.N.Y. 2013), the plaintiff alleged that "it is medically impossible to rebuild cartilage that has been

damaged or destroyed simply by taking glucosamine and/or chondroitin supplements, however formulated," and "cite[d] to numerous scientific studies" that supported the allegation "that glucosamine and chondroitin products cannot reverse the deterioration of cartilage or cause it to be rebuilt." *Id.* at 543-44. Based on these allegations, the court held that "the plaintiffs plausibly alleged that the defendant's claim that the Glucosamine Supplements 'help rebuild cartilage' is false or deceptive—particularly given that plaintiffs need not meet Rule 9(b)'s heightened pleading standards." *Id.* at 544.[5]

Similarly, in *Sitt v. Nature's Bounty, Inc.,* 2016 WL 5372794, at *10 (E.D.N.Y. Sept. 26, 2016), the plaintiff alleged that "all the reliable studies of black cohosh have demonstrated that it does *not* help to alleviate hot flashes, night sweats, mild mood changes, or any other symptoms of menopause." *Id.* at *10 (internal quotation marks omitted, emphasis in original). The court held that the plaintiff had sufficiently alleged actual falsity because she "has explained in detail her allegation that the scientific evidence shows that this representation is false." *Id.; see also Toback v. GNC Holdings, Inc.*, 2013 WL 5206103, at *3 (S.D. Fla. Sept. 13, 2013) (holding that the plaintiff had alleged more than a lack of substantiation claim because she affirmatively alleged "that studies have shown glucosamine and chondroitin, two ingredients of the TriFlex products, to be ineffective in promoting joint health").

---

[5] In contrast to *Quinn,* Plaintiff here is required to meet Rule 9(b)'s heightened pleading standard.

In contrast to these cases is *Kwan*, where the court dismissed both the original and the amended complaint because the plaintiff failed to allege scientific studies or literature that directly contradicted the defendant's advertising claim. 2015 WL 848868, at *5. Likewise, in *Hodges v. Vitamin Shoppe, Inc.*, the court dismissed a complaint because the plaintiff had failed to "inject precision or some measure of substantiation into [his] fraud allegation," as required by Rule 9(b). 2014 WL 200270, at *3 (D.N.J. Jan. 15, 2014). The plaintiff alleged that the one active ingredient in the defendant's product was "'known to be useless' for a variety of physiological functions," and that the defendant "knowingly under-doses" other active ingredients that could otherwise have offered "some of the claimed benefits." *Id.* at *4. The court held that "[d]espite the superficial appeal" of these arguments, "a closer examination reveal[ed] that [they] lack[ed] a factual basis," because the various scientific studies cited by the plaintiff were "by and large inapposite to the crucial assertion that [the defendant's] representations about the Product's benefits are false." *Id.* Instead, the court said, the plaintiff's "claim of falsity appear[ed] to rest on the *absence* of scientific support" for the defendant's representations. *Id.* (emphasis in original). "For example, the [c]omplaint state[d] that [one ingredient] 'has been clinically proven effective *only at certain doses* to increase strength and muscle mass,' and then aver[red], without support, that at the dosing indicated by the Product, the [ingredient in question] could not achieve those benefits." *Id.* (emphasis in original; citation omitted). The court held that "[t]he implication that affirmative proof as to the effectiveness of an ingredient at one dosage renders it

ineffective at some other, lower dose, as contained in the Product's formulation does not state a *prima facie* Consumer Fraud Act claim" for two reasons. *Id.*

> First, the conclusion on which Plaintiff bases his allegation that Defendant's representations about the Product are false *requires a leap from the existing scientific research.* As pled in the [c]omplaint, this leap is made through nothing but speculation. In other words, no factual allegations bridge the studies cited to the conclusion underpinning the alleged falsity. Second, despite Plaintiff's arguments to the contrary, Plaintiff's allegations of falsity *are rooted in the lack of prior substantiation* that benefits are possible at the Product's dosage of active ingredients.

*Id.* (emphasis added).

As will be seen, Plaintiff's arguments here are similar to those rejected in *Hodges.* Superficially, Plaintiff's arguments suggest that she has support for her allegation of falsity, but, upon closer examination, the allegations on which Plaintiff relies require a "leap [ ] made through nothing but speculation" in order to reach the conclusion of falsity Plaintiff advances. Like the false advertising claim in *Hodges,* "[t]he assertion that the Product is ineffective appears . . . to be based on Plaintiff's own conclusion as to the inability of the Product's . . . ingredients . . . to deliver the promised benefits." *Id.* For this reason, Plaintiff's false advertising claim "does not meet the Rule 8(a) standard articulated by *Iqbal,* much less Rule 9(b)'s requirement that the circumstances constituting fraud must be stated with particularity." *Id.* at *5.

To be sure, one might legitimately wonder how a person's "energy" can be measured to determine whether the 4 hours of nutritious steady energy representation is actually true or false. Neither party provides the Court with an

answer to that question, nor even suggests a definition of "energy" to apply.[6] But because Plaintiff bears the burden of pleading and proving falsity, it is her failure to allege how the trier of fact would determine whether the advertising claim is false that matters. It could be that the 4 hour energy claim is false because it is impossible to measure the energy benefits from consuming the Product. But if that is true, then could a reasonable consumer have been misled by Defendant's representation? If the answer to that question is no, then Plaintiff cannot state a false advertising claim,[7] which may be the reason Plaintiff does not pose the question.

At the same time, Defendant also does not make this argument, standing steadfastly by its position that the 4 hour energy claim is measurable and supported

---

[6] A dictionary definition of energy, for instance, does not suggest a measurable concept. *See https://www.merriam-webster.com/dictionary/energy Merriam-Webster* (*energy:* 1. dynamic qualify; the capacity of acting or being active; a usually positive spiritual force; 2. vigorous exertion of power; 3. a fundamental entity of nature that is transferred between parts of a system in the production of physical change within the system and usually regarded as the capacity for doing work; 4. usable power (such as heat or electricity); *also*: the resources for producing such power).

[7] "Many literally false statements are not deceptive. . . . [If] no one is deceived, [ ] there is no injury, and a suit by a competitor [or consumer] . . . would fail. The cases that reject liability do so in the name of 'puffery'—meaningless superlatives—but the principle cuts deeper; if no one is or could be fooled, no one is or could be hurt." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009). Some courts have recognized "that non-actionable 'puffery' comes in at least two possible forms—(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying"; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000). It is at least arguable that a consumer might understand the word "energy" and hence Defendant's 4 hour representation as falling into the second category.

by extensive scientific research it has undertaken with respect to the Products. Defendant represents to the Court that the research relates to the key ingredient of the Products—SDS—which stands for "slowly digestible starch." According to Defendant, the Products are proven to release carbohydrates slowly over 4 hours, and the "4 hours of steady energy" concept "is linked to" that slow release. R. 57-1 at 18; *id.* at 40. If true, it would seem that the more accurate (but less enticing) advertising claim would be "4 hours of slow release of carbohydrates," rather than the actual claim made here of "4 hours of nutritious steady energy." But, again, Plaintiff does not make that argument, instead simply challenging the concept in general that the Products provide 4 hours of energy, whatever that undefined term may mean.

That Defendant's insertion of the words "steady energy" in place of "slow release of carbohydrates" is not *necessarily* false or misleading is supported by the facts in *Hansen Beverage Co. v. Vital Pharmaceutical, Inc.*, 2008 WL 5427601 (S.D. Cal. Dec. 30, 2008). There a similar falsity issue was addressed, not on a motion to dismiss as here, but on the plaintiff's motion for a preliminary injunction. The advertising claim at issue was the defendant's representation that its energy drink provided "7 Hours of Pure Energy" and "7 Hours of Sustained Energy." The plaintiff presented the opinion of an expert, who testified that, "based on the drink's ingredients, the concentration of those ingredients, and generally accepted principles of biochemistry, pharmacology, and physiology," the defendant's 7 hour energy claim was "scientifically impossible regardless of whether the [c]ourt

construes the definition of 'energy' as caloric energy [defined as 'the ability to do work'] or merely an 'energized feeling.'" *Id.* at *3. The defendant, on the other hand, presented a competing expert, who argued against a "narrow calorie-based definition" of "energy," and "opine[d] that caffeine, one of the main ingredients of defendant's product, is reasonably classifiable as an energizing ingredient." *Id.* at *4. The defendant's expert cited to scientific studies supporting his opinion about the effects of caffeine, and noted other ingredients in the defendant's energy drink that "contribute[d] to the production of glucose in the body (a potential source of energy) as well as buffer acidic buildup in the muscles, adding to physical work capacity." *Id.* "Pursuant to these reasons, [the defendant's expert] opine[d] that consumption of one bottle of [the energy drink] would enhance energy over a seven hour period." *Id.*

Much like the defendant's expert in *Hansen Beverage Co.*, who relied on the caffeine in the defendant's energy drink to support his opinion regarding the validity of the 7 hour energy claim in that case, Defendant here relies on scientific studies concerning SDS to support the validity of its 4 hour energy claim. Defendant would like the Court to take judicial notice of those studies and hold that they are consistent with Defendant's 4 hour claim. But the Court declines to do so. While it is true that documents referenced in and central to the allegations in the complaint are considered part of the pleadings,[8] it would not be appropriate for the Court to conduct a substantive analysis of Defendant's supporting studies, which are

---

[8] *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

scientific in nature and likely require expert testimony for a lay factfinder to be in a position to understand with any degree of clarity or certainty. The *Hansen* court declined on the limited factual record before it in the preliminary injunction hearing to resolve the difficult issues of law and disputed fact raised by the parties' competing experts and definitions of "energy," and this Court similarly declines to do so based on an even more undeveloped factual record (with no expert testimony) at the motion to dismiss stage.

But because this is not a lack of substantiation case, determining whether Defendant's studies actually support its 4 hour energy claim is unnecessary. The issue for the Court is whether Plaintiff alleges a plausible basis for her claim that the 4 hour energy representation is actually false. And unlike the plaintiff in *Hansen,* Plaintiff does not cite to any expert opinion to support her view that Defendant's advertising claim is false. Nor does she allege any studies, like the plaintiffs in *Quinn* and *Sitt* did*,* which tested either the Defendant's Products or the SDS in Defendant's Products, and concluded that either the Products or the SDS in them do not produce the advertised result.

### D.    THE KBE025 STUDY

Rather than rely on studies or evidence directly contradicting Defendant's 4 hour energy claim, Plaintiff cites to a study performed by Defendant in 2013 called the "KBE025 study." The results of the KBE025 study are reflected on an internal document, which appears to be a power point presentation apparently produced by Defendant in discovery in this case while Defendant's first motion to dismiss was

pending. According to Plaintiff, the power point presentation "show[s] that, to obtain the represented four hours of sustained energy the product cannot be consumed alone." R. 57 (¶ 8); *see also id.* (¶¶ 48-52). Because Plaintiff's argument concerning the KBE025 study is based solely on one page of the power point presentation, the Court reproduces that page in full:

## Portion size study induced the lowest amount of carbs in the breakfast

| Study Name | Portion size product (g) | SDS Biscuit (g/portion) | Tot Av Carb / product | Tot Av Carb / Bkft (g) |
|---|---|---|---|---|
| Nazare | 80 | 21 | 58,6 | 67 |
| Study 2 (NU102) | 70 | 14,8 | 52,5 | 68 |
| Study 1b (NU132) | 72 | 15,3 | 51,6 | 58 |
| Study 1b (NU132) | 72 | 17,0 | 51,4 | 58 |
| Study 1b (NU132) | 72 | 15,5 | 51,4 | 59 |
| Study 1 (BE008) | 70 | 12,0 | 50,5 | 65 |
| Study 3 (BE002) | 62 | 8,7 | 42,5 | 67 |
| KBE025 | 50 | 9,5 | 36,7 | 49 |
| KBE025 | 42 | 8,0 | 30,9 | 44 |

**No Go as not Enough Carbs for Sustained Energy Claim**

- As expected, compared to previous studies, portion Size study provided
  - The lowest quantity of available carbohydrates from cereal product (and breakfast)
  - the lowest quantity of SDS (except study 3)
  - **However, portion size of 50 g seems to be comparable to previous clinical trials to provide the same beneficial effects on slow release of carbohydrates throughout the morning.**

R. 57-1 at 103.

Plaintiff's argument focuses on the "No Go" comment in the right margin of the page, a comment made in reference to a 42 gram portion-size product. The Products at issue here come in a 50 gram portion size; the 42 gram portion size is not at issue and has never been marketed or sold by Defendant. Plaintiff's argument proceeds as follows: The total average carbohydrates figure for the 42

16

gram product when consumed with breakfast is, according to the chart, 44, which Plaintiff then compares to the total average carbohydrates figure for the 50 gram product without breakfast, which, according to the chart, is 36,7.[9] Plaintiff argues that if 44 grams of total carbohydrates was a "No Go" on the "Sustained Energy Claim" for the 42 gram product with breakfast, then the 36,7 figure of total carbohydrates for the 50 gram product without breakfast necessarily also must be a "No Go." *See* R. 75 at 11.

Defendant argues that Plaintiff is misinterpreting the results of the KBE025 study by focusing on the total carbohydrates figures in the fourth and fifth columns of the chart and ignoring the SDS figures in the third column, which, according to Defendant, is the basis for its advertising claim. The third column shows that the amount of SDS in the 50 gram product exceeds that of the 42 gram product. Plaintiff counters that the "No Go" comment uses the word "Carbs," not "SDS," and argues that her interpretation of the study is at least plausible, citing to case law which states that disagreements over the interpretation of research is a factual issue inappropriate for resolution on a motion to dismiss.

The Court agrees that it should not resolve disagreements over interpretation of studies on a motion to dismiss. *See Sitt,* 2016 WL 5372794, at *10 (noting that the issue of what weight to give the studies cited by the plaintiff, as opposed to the studies on which the defendant relied, could not be resolved on motion to dismiss).

---

[9] The Court assumes that the figures reflected on the chart use a comma where, in this country, one would use a decimal mark. *See https://en.wikipedia. org/wiki/Decimal_mark.*

But the Court disagrees that a decision on Defendant's motion to dismiss turns on such a resolution. The question here is whether the "No Go" comment is sufficient to raise a plausible claim of falsity with regard to the "4 hours of nutritious sustained energy" representation. For it to do so, the "No Go" comment must directly support Plaintiff's allegation of falsity. But because that comment is made in reference to a product not at issue here, it is not direct evidence of falsity. Instead, Plaintiff leaps to the conclusion that a comment, which speaks to something not at issue, also must speak to another thing, which is at issue. And that "leap" is made based solely on Plaintiff's unsupported, and thus speculative, assertion.

Not only are Plaintiff's views about the meaning of the "No Go" comment speculative, but they are contrary to the power point presentation considered as a whole.[10] The stated purpose of the KBE025 study was not to compare the 50 gram product to the 42 gram product but to compare both those products with a control product that did not contain SDS. *See* R. 57-1 at 88. The study concluded that the 50 gram product compared favorably ("glycemic responses were significantly reduced compared to the products without SDS"), whereas no difference was found between the 42 gram product and non-SDS products when combined with breakfast. *Id.* at 91. Viewed in light of this purpose, the "No Go" comment refers to an inability to draw a favorable comparison between the 42 gram product and products with low

---

[10] The Court is not limited to examining only the page of the KBE025 study on which Plaintiff relies but may consider that document in its entirety. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) (where the complaint's "allegations are contradicted by [the] written exhibits that [the plaintiff] attached to [her] amended complaint, . . . the exhibits trump the allegations").

amounts of SDS in them. This "No Go" on a favorable comparison to non-SDS containing products, however, does not directly contradict the 4 hour energy claim Defendant makes about the 50 gram Products, a point made clear by numerous statements throughout the document that affirm the 4 hour claim with respect to the 50 gram Product.[11] Indeed, on the very same page the "No Go" comment is found, and apparently in contradistinction to the "No-Go" comment about the 42 gram product, a specific statement is made *confirming* Defendant's findings regarding the 50 gram Product:

> *However*, portion size of 50 g seems to be comparable to previous clinical trials to provide the same beneficial effects on slow release of carbohydrates throughout the morning.

R. 57-1 at 103 (emphasis added).

While the "No Go" comment may be ambiguous, these other statements in the KBE025 study are not. They clearly support Defendant's 4 hour energy claim. And nothing in the document suggests that, whatever else it may mean, the "No Go" comment was viewed by Defendant as being inconsistent with the unambiguous supporting statements about the 50 gram product. According to Defendant, the reason Plaintiff sees an inconsistency between the "No-Go" comment and the 4 hour

---

[11] *See, e.g.,* R. 57-1 at 91 ("Positive results obtained on 50g dose: glycemic response is significantly reduced after 50g belVita . . . compared to control product (without SDS) . . . Product also tested alone which confirm that the effect is related to the biscuits, when included in a breakfast"); *id.* at 93 ("we validate that 50g of belVita will provide similar response as previous scientific studies on slow appearance rate of carbohydrates throughout the morning"); *id.* at 94 ("Confirmed with product alone"); *id.* at 95 ("The 50g bel Vita is consistent with existing scientific evidence"; "Stable and moderate appearance of glucose throughout the morning"").

energy claim is that she incorrectly argues that the total amount of carbs would be the determining factor as to the substantiation of the claim, when in fact the presence and effect of slowly digestible starch is the basis for the claim. The Court does not need to resolve that dispute, however. Whether the statements in the KBE025 power point presentation about the 50 gram Product are accurate is not relevant here because Defendant does not have to prove the truth of its advertising claim. The issue instead is whether the "No Go" comment constitutes evidence of actual falsity with respect to the 50 gram Product and 4 hour energy claim. And the Court must conclude that it does not because it is made (1) with respect to a product not at issue (the 42 gram product), and (2) about an issue (comparison to low SDS-containing products) that does not directly refute Defendant's allegedly false advertising claim.

Numerous courts have conducted similar reviews at the motion to dismiss stage of alleged evidence of falsity and reached the same conclusion as the Court does here. For instance, in *Greifenstein v. Estee Lauder Corp.*, the plaintiff alleged that the marketing of "Origins Plantscription Anti-aging Serum" violated the ICFA because "there is clinical evidence that the Products do not actually have the represented wrinkle repair benefits." 2013 WL3874073, at *5 (N.D. Ill. July 26, 2013). The plaintiff rested her falsity argument on a National Advertising Division ("NAD") study, which recommended that Origins discontinue making claims suggesting that the product was comparable to prescription anti-aging products or using terms like "repair" because they "communicate a far broader performance

benefit than the evidence in the record supports." *Id*. The court dismissed the complaint, noting that the study did not even address one of the main wrinkle-repair claims that the plaintiff alleged was false and that the study was not the "last word" on other product claims. Because the NAD study was the plaintiff's only basis for certain claims, the court found she did not plead falsity with sufficient particularity. *Id*. Plaintiff commits the same mistake that the plaintiff in *Greifenstein* did, relying on a comment in a document about a different product that does not address the issue in the lawsuit.[12]

Finally, Plaintiff argues that, "contrary to Defendant's assertion, the KBE025 study *does not confirm* [emphasis added] that the Product eaten alone [emphasis in original omitted] 'provides the promised energy' for four hours because that i[s] not what it was testing for." R. 75 at 12 (emphasis in original). Plaintiff also argues that the KBE025 study "*does not prove*" the "4 hours of sustained energy" claim, *id*. at 13 (emphasis added), and that "*[n]owhere* in the United States does Defendant provide

---

[12] *See also Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 138 (E.D.N.Y. 2015) (referring to the "mismatch between" the scientific studies on which the plaintiffs based their claims and the defendant's allegedly false advertising); *Padilla v. Costco Wholesale Corp.*, 2013 WL 195769, at *4 (N.D. Ill. Jan. 16, 2013) (dismissing ICFA claim because the plaintiff failed to draw a connection between the clinical studies he cited and the actual representations appearing on the product label); *Toback*, 2013 WL 5206103, at *5 (holding that the plaintiff's allegations regarding the inefficacy of two ingredients in the product "simply fail to address the efficacy of the" product as a whole and "thus fail to raise [the] [p]laintiff's claim, that the [product] as a whole does not function as advertised, above the speculative level"); *Eckler*, 2012 WL 5382218, at *7-10 (holding that even if one assumed the studies on which the plaintiff relied were correct, they did not render the plaintiff's claim plausible because (1) they did not involve the product at issue, and (2) their focus was much narrower than the more general representation about the product made by the defendant).

access or reference to any study, peer-reviewed or otherwise, *which supports its claim* regarding steady energy for four hours all morning," *id.* at 15 n.21 (emphasis added). These arguments are revealing because they prove that Plaintiff's arguments about the KBE025 study are based on lack of substantiation, *not* falsity. While lack of substantiation evidence may be supportive of Plaintiff's false advertising claim, it is not *sufficient* to give rise to a plausible claim of falsity. *See Hodges*, 2014 WL 200270, at * 4 (allegations are probative of falsity if they concern ineffectiveness, not non-substantiation). "Without a factual predicate for the ineffectiveness of the Product formulation, that is, the alleged *inability* of the Product to provide the benefits as stated on the Product label . . . , it is difficult to discern how [the 'No Go" comment] pleads the circumstances constituting fraud, as required by Rule 9(b)." *Id.* (emphasis added).

### E. OTHER FACTUAL ALLEGATIONS ON WHICH PLAINTIFF RELIES

For the same reasons already discussed regarding Plaintiff's reliance on the KBE025 study, the Court also rejects Plaintiff's reliance on other documents cited in the amended complaint to show that her claim of falsity is plausible.

For instance, Plaintiff cites to documents that reflect the general principle that metabolism and digestion varies from person to person, based on "a person's age, size, gender, activity level and his or her individual body composition." R. 57 (¶ 35).[13] "A person's energy level in response to consuming a food is further affected

---

[13] Some of those documents were produced by Defendant in discovery in this case, including an email exchange discussing the need for additional research prior to

by what, if anything else, is consumed (liquid and/or solid food) with the product."
*Id.* From these principles, Plaintiff argues that "the blanket claim of four hours of
'nutritious steady energy' from eating the Products alone is false." *Id.; see also id.*
(¶¶ 36-47).

Defendant asks the Court to look at the studies it performed to conclude that
Defendant's testing did take into account individual variations.[14] But again it is not
necessary for the Court to resolve that issue. The variability concept does not
directly address the question at issue here of whether the 4 hour claim is false.
Moreover, Plaintiff does not cite any factual basis for the Court to infer that there is
an inherent inconsistency between individual variations and the 4 hour claim; for
instance, individual variations may exist but not impact the 4 hours of steady
nutritious energy claim (which could be the floor below which no individual would
ever fall). Instead, Plaintiff's arguments proceed as if the inherent inconsistency is
self-evident. *See Hodges*, 2014 WL 200270, at *4-5 (plaintiff's assertion of falsity
"appears [ ] to be based on [her] own conclusion as to the inability [of the Products
to satisfy the representation]").

Plaintiff also appears to draw her own conclusions from guidelines that
people need 2,000 to 3,000 calories daily, as well as a magazine article stating that

---

marketing the Products in China because the Asian population has a "slightly
different carb metabolism, being less sensitive to insulin." R. 57-1 at 81.

[14] According to Defendant, its research took into account individual variabilities in
general as well as those based on population characteristics such as size, weight,
gender and nationality. Defendant contends that even taking these variations into
account, its studies "wholly support[ ]" the steady energy claim.

one third of a person's daily energy requirements should be consumed at breakfast. From that, Plaintiff argues that the 230 calories provided by a 50 gram serving of the Products could not guarantee 4 hours of nutritious steady energy for every consumer. In addition, Plaintiff cites to various statements by Defendant that the Products "are not a meal replacement," that they provide a portable and convenient on-the-go meal, and that the company should market the Products with other products for a balanced breakfast. Plaintiff's reliance on these latter statements harkens back to the original complaint in which Plaintiff argued Defendant has admitted that the promised 4 hours of steady energy can only be achieved if the Products are consumed with other food, such as a glass of milk.[15]

Nothing about the general principles or statements by Defendant to which Plaintiff cites suggests that it is plausible, as opposed to just possible, that Defendant's energy representation is false. Such general facts are not specific factual allegations that disprove that slowly digestible starch provides 4 hours of steady energy. Because Plaintiff's allegations based on general principles do not affirmatively show that the Products do not lead to 4 hours of sustained energy, they are insufficient to provide the required plausibility for Plaintiff's claim of falsity.

---

[15] Defendant counters that Plaintiff's arguments demonstrate her lack of understanding that the steady energy derives not simply from the number of calories but rather from the body's metabolizing the nutrients in the slowly digestible starch. Suggestions made by Defendant that the products be part of a breakfast, meanwhile, supposedly stem not from a need for more calories but from a desire to promote well-rounded nutrition. The Court does not need to resolve the parties' disagreements on these issues either.

Finally, in what appears to be an argument that falls into the "if all else fails" category, Plaintiff refers to her allegation—missing from the original complaint—that Plaintiff consumed the Products and did not herself experience 4 hours of steady energy. R. 75 at 10. While anecdotal evidence of falsity is a type of allegation to which the *Kwan* court referred as being one way a plaintiff could allege falsity, the Court agrees with other courts that have considered similar allegations and found them to be insufficient:

> Plaintiff's claim is not salvaged by his conclusory allegation that the Vitapak "did not help repair or preserve" his cartilage. Though a plaintiff's factual allegations must be taken as true on a motion to dismiss, a court need not give credence to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Plaintiff's allegation that the Vitapak did not repair his cartilage, or in other words that it did not function as advertised, is devoid of any further detail or support. The Complaint does not discuss why Plaintiff believes the product he consumed did not repair his cartilage or otherwise elaborate upon the allegation. Without more, Plaintiff's bare assertion that the Vitapak did not function as advertised is merely a "legal conclusion couched as a factual allegation," which this Court is not bound to accept as true.

*Toback*, 2013 WL 5206103, at *3 (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 555); *see also Eckler*, 2012 WL 5382218, at *8 n.2 (dismissing complaint and noting that, to the extent the plaintiff's claim turned on her own experience, she needed to "say far more than, in essence, 'I took Equate and didn't feel any better'").[16]

---

[16] Plaintiff's new allegation that she did not experience 4 hours of sustained energy (whatever that means) after consuming the Product also is too conclusory without

# CONCLUSION

Plaintiff's claim of falsity is not supported in a direct way by any of the materials she cites. Instead, Plaintiff relies on inferences, assumptions, and leaps from general principles that neither rise to the plausibility level required under the *Iqbal/Twombly* standard nor the particularity level needed under Rule 9(b). Accordingly, Defendant's motion to dismiss, R. 68, is granted. Plaintiff already has been given the opportunity once to cure the deficiencies in her pleading, and the Court sees no basis for allowing another try. Accordingly, dismissal is with prejudice.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: September 27, 2017

---

further factual details to support the injury element of her ICFA claim. *See Spector,* 178 F. Supp. 3d at 672-73 (holding that the question of whether Plaintiff has alleged an injury cognizable under the ICFA is analytically distinct from the question whether she has suffered an injury sufficient to confer constitutional standing to bring her claim, and noting that Illinois law provides that, "[u]nder the ICFA, a plaintiff who alleges deceptive advertising about the effectiveness of a product has not suffered an injury if she believed the [product] [was] effective and never complained to anyone that [it] did not work") (internal quotation marks and citation omitted); *see also Hodges,* 2014 WL 200270, at *5 (noting that the argument that a "Consumer Fraud Act claim fails to state an ascertainable loss" is "distinct" from the argument that "an injury-in-fact has been stated to meet the 'irreducible constitutional minimum' of Article III standing").